VICTORY, J.*
|/We granted this writ application to consider whether the United States Supreme Court’s decision in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), applies in a case in which the juvenile offender committed multiple offenses resulting in cumulative sentences matching or exceeding his life expectancy without the opportunity of securing early release from confinement. Having reviewed the record and the applicable law, we find Graham’s holding that the Eighth Amendment’s prohibition of cruel and unusual punishment forbids the imposition of life in prison without parole for juveniles committing non-homicide crimes, applies only to sentences of life in prison without parole, and does not apply to a sentence of years without the possibility of parole. Therefore, we reverse the decision of the trial court which amended *333 defendant’s four 10-year sentences for four armed robberies.
FACTS AND PROCEDURAL HISTORY
On October 27, 1999, defendant, Giovanni Brown, and an accomplice approached seventeen year-old William Boada, Jr. (“Bill”) while he was outside his home washing his car. Bill declined defendant’s offer to purchase a phone card and |2went inside to retrieve a pen for defendant, and, as he entered his home, defendant put a gun to his back, removed the phone from its hook, and ordered Bill to lie on the ground. After demanding to know if anyone else was in the house, defendant went looking for Bill’s fifteen-year-old brother Brian while his accomplice held a gun on Bill. After defendant’s search was unsuccessful, Bill went to the locked bathroom where his brother was taking a shower, and defendant repeatedly attempted to kick down the bathroom door. When Brian came out, defendant and his accomplice pointed their guns at his face. Bill and Brian were questioned about the location of any money in the house and about when their father would be home. They were then taken at gunpoint to an upstairs bedroom where they were ordered to strip to their underwear, and bound with duct tape from their wrists to their elbows, from their ankles to their knees, and around their head and mouth, with small holes cut out around their mouths. They were then dragged to a bathroom and left lying on their sides with the door shut, where they could hear the perpetrators rummaging around the house. A short time later, Bill’s girlfriend, Amanda, came to the house, and when she opened the front door, she saw defendant and his accomplice, both with guns, coming down the stairs. She was brought into the kitchen. Immediately thereafter, Mr. Boada came home and was met by the perpetrators. They demanded money and stated they would hurt the bound victims if Mr. Boada did anything “stupid.” After forcing Mr. Boada to open a safe box and finding no money, they ordered Mr. Boada to go with defendant to an ATM machine and withdraw money. Mr. Boada insisted on seeing his children, and he and Amanda were taken upstairs, where Amanda was bound with duct tape in the same manner as Bill and Brian. Mr. Boada saw his children bound and visibly frightened. Defendant then forced Mr. Boada at gunpoint to drive Amanda’s car to the bank, with his accomplice threatening that if they didn’t |sreturn, he would hurt the remaining victims. At the bank, Mr. Boada realized he did not have his ATM card, and defendant became irritated and ordered Mr. Boada to return home. Upon return, Mr. Boada was bound with duct tape and placed in the bathroom with the other victims. The perpetrators continued to ransack and search the house, periodically checking on the victims and telling them they would let them know when they were leaving. The victims took this to mean defendant was going to kill them before they left and they all believed they were going to die. After some time had passed and the house became quiet, the victims untied themselves, escaped from the house and called the police. Bill’s hands were swollen and numb from lack of circulation, and he was having trouble breathing. When the police arrived, they discovered the house was ransacked and that various items had been stolen, including clothes, shoes, two watches, a stereo, computer, camcorder, digital camera, Bill’s BMW, and Amanda’s Malibu. A few weeks later, defendant and his accomplice were arrested and defendant was charged with aggravated kidnapping and four counts of armed robbery. Defendant was sixteen years old when he committed these crimes.
*334 Defendant was found guilty of all charges and the court sentenced him to the mandatory term of life imprisonment without benefit of parole, probation, or suspension of sentence for the aggravated kidnapping, and to four 10-year terms, also “without benefit,” for each of the armed robberies. The court ordered all sentences to run consecutively. The court of appeal affirmed. State v. Brown, 01-160 (La.App. 5 Cir. 5/30/01), 788 So.2d 667. Defendant did not seek review in this Court.
In 2011, defendant filed a motion to correct illegal sentence pursuant to the United States Supreme Court’s decision in Graham, supra, which held that imposition of life sentences without benefit of parole eligibility on juveniles who commit non-homicide offenses violates the Eighth Amendment prohibition against 14 cruel and unusual punishment. The district court granted the motion and amended all of defendant’s sentences to delete the parole eligibility restrictions and instructed the Department of Corrections to amend his prison master to reflect that he is now parole eligible on all of his five convictions. In his oral reasons, the trial court explained:
So, from a standpoint of the arguments that have been made per the Defendant Brown’s motion too [sic] correct, what I agree, is an illegal sentence as it relates to Graham v. Florida, the Court will strike the sentence as it relates to there being no benefit of parole on the aggravated kidnaping charge, and in line with the consecutive sentences on the armed robbery charges subject to the State’s objection, which is under the law an understandable objection, the Court, because of the ruling in Graham, and the position taken by the Louisiana Supreme Court, the Court is going to strike the component of the armed robbery sentences that were run consecutive to the life sentence on the aggravated kidnaping. I’m going to strike the component that called for those to be run without benefit of parole also. It would be illogical to require one to serve a life sentence even if you can get paroled when you then would be facing 40-years on the armed robbery charges without benefit of parole. It would negate the effect of the Court’s, both the Louisiana Supreme Court and The Supreme Court’s earlier rulings. So, I am not going to review the sentences in spite of the good work of Mr. Brown. I do not think that is my role here, and do not have any legal authority to do so to impact the sentences, but I will further dictate of those two higher courts, strike the inability of Mr. Brown to seek parole, and I will specifically allow that, and correct the sentence as it relates to both the aggravated kidnaping charge, and the four armed robbery charges.
The district court felt bound under Graham to delete the parole restrictions not just on the life sentence, but on all the sentences, in order “to give effect to Graham’s requirement that the defendant be given ‘some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.’ ” According to the court, imposing “40 years of additional time without benefits after a parole review of a life sentence would effectively negate Graham’s ultimate directive to provide an opportunity for rehabilitation for the juvenile.” The court of appeal affirmed, finding that Graham’s intent was “to give juvenile defendants convicted of non-homicide offenses some meaningful opportunity to obtain release.” State v. Brown, 12-0093 (La.App. 5 Cir. 3/27/12) - So.3d -. We granted the State’s writ application to consider its argument that while the district court properly eliminated the parole restriction on the life sentence, *335 nothing in Graham authorized it to amend his four 10-year armed robbery sentences. State v. Brown, 12-0872 (La.9/21/12), 98 So.3d 320.
DISCUSSION
The issue before us is whether, and to what extent, the United States Supreme Court’s decision in Graham applies in cases in which the juvenile offender committed multiple offenses resulting in cumulative sentences matching or exceeding his life expectancy without the opportunity of securing early release from confinement on parole. According to our calculations, if we accept the State’s argument that the original armed robbery sentences should be reinstated, defendant will be eligible for parole on the life sentence after serving 30 years of that sentence, at approximately age 46,[1] but will not be entitled to release, even if parole would otherwise have been granted, because his armed robbery sentences would run consecutively to the life sentence and he would then have to begin serving those four ten-year sentences; thus, he would not be subject to release until possibly age 86.[2] | ^Therefore, the issue is whether this 70-year sentence is constitutional.
In recent years, the United States Supreme Court has issued a string of cases applying the Eighth Amendment’s prohibition of cruel and unusual punishment to limit the punishment that may be imposed on juvenile defendants. In Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court held that the Eighth Amendment forbids the imposition of the death penalty on persons who were under 18 when their crimes were committed. In Graham, the Supreme Court similarly held that the Eighth Amendment forbids the imposition of life in prison without parole for persons who were under 18 when they committed crimes other than homicide. Thereafter, in Miller v. Alabama, 567 U.S.-, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the Supreme Court held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile homicide offenders. In contrast with the holdings in Roper and Graham, which categorically banned certain sentences for classes of offenders, the Miller holding permits the imposition of a life sentence without parole but only after an opportunity to consider mitigating circumstances.
*336 In Graham, the Court focused on the uniqueness of juvenile offenders, i.e., their lessened culpability because of their young age and their greater capacity for reform than adult offenders, and the historical treatment of non-homicide crimes as less severe than homicide crimes. 560 U.S. at -, 130 S.Ct. at 2026, 2027. In determining that life without parole was unconstitutional for juveniles committing non-homicide crimes, the Court held:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation .... The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomieide crimes committed before adulthood will 17remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.
Id. at 2080. Justices Thomas and Alito dissented. Justice Thomas criticized the majority for ignoring its traditional “death is different” approach by applying the Eighth Amendment in the non-homicide arena. 560 U.S. at-, 130 S.Ct. at 2046 (Thomas, dissenting). In his view, if the Court has the authority to categorically exempt a certain class of offenders from the “second most severe penalty,” there is nothing to prevent the Court from also exempting additional classes of offenders “from the law’s third, fourth, fifth, or fifteenth most severe penalties as well.” Id. Further, Justice Thomas urged that the Court does not have the power under the Constitution to determine whether a life without parole sentence fits the crime at issue because the Constitution has assigned that power to the voters and their elected officials. Id. at 2058. By doing so in this case, Justice Thomas felt that the Court “reached to ensure that its own sense of morality and retributive justice pre-empts that of the people and their representatives.” Id. Justice Alito joined Justice Thomas’s dissent, but wrote separately to make clear that “[njothing in the Court’s opinion affects the imposition of a sentence to a term of years without the possibility of parole.” 560 U.S. at -, 130 S.Ct. at 2058 (Alito, dissenting).
In light of the above, state courts are left to grapple with sentences such as the one possibly at issue here, i.e., a term of years that may exceed the life span of the defendant. Does Graham only apply to actual life sentences without parole, or is there some upper limit on a term of years sentence that would violate Graham’s vague directive that a state must give juvenile defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation? Courts are understandably split on this issue, with some holding that |sonly a life sentence without parole violates Graham,[3] and others holding that various term *337 of years sentences violate Graham, because they give defendants no meaningful opportunity to obtain release.[4]
The United States Supreme Court recently denied certiorari in Bunch v. Smith, a case in which the Sixth Circuit rejected the defendant’s claim that his 89-year sentence without parole for nine non-homicide offenses violated Graham because it was the functional equivalent of life without parole and did not give him any meaningful opportunity to obtain release. Bunch v. Smith, 685 F.3d 546 (6th Cir.2012), cert. denied, 569 U.S.-, 133 S.Ct. 1996, 185 L.Ed.2d 865, 2013 WL 1704719 (April 22, 2013). In determining that the defendant was not entitled to relief, the court reasoned:
It is true that Bunch and Graham were both juvenile offenders who did not commit homicide. But while Graham was sentenced to life in prison for committing one nonhomicide offense, Bunch was sentenced to consecutive, fixed-term sentences — the longest of which was 10 years — for committing multiple nonho-micide offenses. In Graham, the Court made it clear that “[t]he instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.” Id. at 2023 (emphasis added). The Court stressed that drawing a “clear line” was “necessary to prevent the possibility that life without parole sentences will not be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to mer *338 it that punishment.” Id. at 2030 (emphasis added). The Court reasoned that “[bjecause ‘the age of 18 is the point where society draws the line for many purposes between childhood and adulthood/ those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.” Id. (emphasis added) (quoting Roper, 543 U.S. at 574, 125 S.Ct. 1183). The Court did not address juvenile offenders, like Bunch, who received consecutive, fixed-term sentences for committing multiple non-homicide offenses. Thus, we cannot say that Bunch’s sentence was contrary to clearly established federal law.
To be sure, Bunch’s 89-year aggregate sentence may end up being the functional equivalent of life without parole. For this reason, Bunch argues that he will not be given the “meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation” called for in Graham, 130 S.Ct. at 2030. But in Graham, the Court said that a juvenile is entitled to such a “realistic opportunity to obtain release” if a state imposes a sentence of “life.” Id. at 2034. That did not happen in this case. And since no federal court has ever extended Graham’s holding beyond its plain language to a juvenile offender who received consecutive, fixed-term sentences, we cannot say that Bunch’s sentence was contrary to clearly established federal law.
Bunch, 685 F.3d at 551 (footnote omitted).[5]
[ inAnother case noted the difficulty of applying Graham to non-life sentences:
If we conclude that Graham does not apply to aggregate term-of-years sentences, our path is clear. If, on the other hand, under the notion that a term-of-years sentence can be a de facto life sentence that violates the limitations of the Eighth Amendment, Graham offers no direction whatsoever. At what number of years would the Eighth Amendment become implicated in the sentencing of a juvenile: twenty, thirty, forty, fifty, some lesser or greater number? Would gain time be taken into account? Could the number vary from offender to offender based on race, gender, socioeconomic class or other criteria? Does the number of crimes matter? There is language in the GroAam majority opinion that suggests that no matter the number of offenses or victims or type of crime, a juvenile may not receive a sentence that will cause him to spend his entire life incarcerated without a chance for rehabilitation, in which case it would make no logical difference whether the sentence is “life” or 107 years. Without any tools to work with, however, we can only apply Graham as it is written. If the Supreme Court has more in mind, it will have to say what it is.
*339 Henry v. State, 82 So.3d 1084, 1088-89 (Fla.App. 5th Dist.2012), review granted, 107 So.3d 405 (Fla.2012).
At the time Graham was decided, Louisiana law foreclosed the opportunity for anyone serving a life sentence to be granted parole, unless the life sentence was commuted to a term of years by the governor. La. R.S. 15:574.4(A)(2) (allowing a person serving a term or terms of imprisonment with or without the benefit of parole for thirty years or more to be eligible for parole consideration after serving at least 20 years and reaching the age of 45, but specifically stating that “[t]his provision shall not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years”); La. R.S. 15:574.4(B) (“[n]o prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years”); La. Const, art. 4, § 5(E)(1) (“[t]he governor ... upon favorable recommendation of the Board of Pardons, may commute sentences .... ”); Bosworth v. Whitley, 627 So.2d 629, 635 (La.1993) (“since 15:574.4(B) provides unequivocally that no inmate serving a life sentence shall be eligible for parole, Inparole consideration would be withheld from the defendant, by operation of law, despite the fact that the applicable penalty provision did not include the words ‘without benefit of parole’ ”).
This Court first considered the effect of Graham on a life sentence for a juvenile defendant in State v. Shaffer, 11-1756 (La.11/23/11), 77 So.3d 939, and two other related cases, State v. Leason, 11-1757 (La.11/23/11), 77 So.3d 933 and State v. Dyer, 11-1758 (La.11/23/11), 77 So.3d 928. In those cases, three prisoners sought relief from their terms of life imprisonment at hard labor following their convictions for aggravated rape, La. R.S. 14:42, a non-homicide crime, committed when they were all under the age of 18. Only one prisoner’s sentence expressly precluded eligibility for parole, but we noted that parole eligibility was nonetheless precluded by operation of law for all life sentences by virtue of La. R.S. 15:574.4(A)(2)(a) and (B). 77 So.3d at 940-41. Recognizing that Graham “require[s] that relators, and all other persons similarly situated, have a meaningful opportunity to secure release as a ‘regular part of the rehabilitative process,’ ” we held that the statutes as applied to the prisoners were unconstitutional under Graham:
We therefore hold, as we must under Graham, that the Eighth Amendment precludes the state from interposing the Governor’s ad hoc exercise of executive clemency as a gateway to accessing procedures the state has established for ameliorating long terms of imprisonment as part of the rehabilitative process to which inmates serving life terms for non-homicide crimes committed when they were under the age of 18 years would otherwise have access, once they reach the age of 45 years and have served 20 years of their sentence in actual custody.
Shaffer, 77 So.3d at 942. The prisoners argued that the appropriate remedy of the Graham violation was to resentenee them according to the penalties provided for the next lesser and included responsive verdict of attempted aggravated rape. We disagreed that this was required under Graham, but held that “[t]he state thus may not enforce the commutation provisos in La. R.S. 15:574.4(A)(2) and 15:574.4(B) against |12relators and all other similarly situated persons, and the former provisions offer objective criteria set by the legislature that may bring into compliance with the Graham decision.” Id. at 942. Thus, we ordered the Department of Corrections to revise the prison master of the prisoner whose sentence was expressly *340 without parole to reflect that the sentence was no longer without benefit of parole. Further, we ordered that all three prison masters be revised “according to the criteria in La. R.S. 15:574.4(A)(2) to reflect an eligibility date for consideration by the Board of Parole.” Id. at 943. The effect of this ruling was that these prisoners would be eligible for parole consideration under La. R.S. 15:574.4(A)(2) when they had served 20 years of their sentences in prison and had reached the age of 45, in spite of the language in the statute that would have precluded parole eligibility. We reasoned that “[a]ccess to the Board’s consideration will satisfy the mandate of Graham.” Id. However, our decision was only “an interim measure (based on the legislature’s own criteria) pending the legislature’s response to Graham.” Id. at 943, n. 6; see also State v. Handley, 11-2087 (La.2/1/12), 79 So.3d 1010 and State v. Skipper, 11-1598 (La.2/1/12), 79 So.3d 1011 (ordering the Department of Corrections to revise respondents’ prison masters in accordance with the directive in Shaffer).
After Shaffer, and in order to comply with Graham, the legislature, by Acts 2012, No. 466, added La. R.S. 15:574.4(D), which provides:
(1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment who was under the age of eighteen at the time of the commission of the offense, except for a person serving a life sentence for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1), shall be eligible for parole consideration pursuant to the provisions of this Subsection if all of the following conditions have been met:
(a) The offender has served thirty years of the sentence imposed.
(b) The offender has not committed any disciplinary offenses in the twelve consecutive months prior to the parole eligibility date.
113(c) The offender has completed the mandatory minimum of one hundred hours of prerelease programming in accordance with R.S. 15:827.1.
(d) The offender has completed substance abuse treatment as applicable.
(e) The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following:
(1) A literacy program.
(ii) An adult basic education program.
(iii) A job skills training program.
(f) The offender has obtained a low-risk designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.
(g) The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.
(h) If the offender was convicted of aggravated rape, he shall be designated a sex offender and upon release shall comply with all sex offender registration and notification provisions as required by law.
(2) For each offender eligible for parole consideration pursuant to the provisions of this Subsection, the committee shall meet in a three-member panel and each member of the panel shall be provided with and shall consider a written evaluation of the offender by a person who has expertise in adolescent brain develop *341 ment and behavior and any other relevant evidence pertaining to the offender.
(3) The panel shall render specific findings of fact in support of its decision.
The legislature also amended La. R.S. 15:574.4(B) to read, in pertinent part, “[ejxcept as provided in Subsection D, no prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years.” La. Acts 2012, No. 466, § 1 (emphasis added). Thus, it is now clear that under Louisiana law, a juvenile defendant serving a life sentence for a non-homicide offense committed before the age of 18 will be parole eligible after serving 30 years |14of his sentence, assuming the other provisions of La. R.S. 15:574.4(D)(1) are met. Had this defendant not committed four other non-homicide crimes in addition to the aggravated kidnaping for which he is serving a life sentence, he would have been parole eligible at age 46 under this new statute. This would assumably comport with Graham’s directive.
However, the complication here is that defendant did commit four other non-homicide crimes and was sentenced to a ten year term of imprisonment without parole eligibility for each of them. See La. R.S. 14:64 (providing that sentences for armed robbery are to be without benefit of parole, probation, or suspension of sentence); La. R.S. 15:574.4(A)(l)(a) (prohibiting parole consideration for a person convicted for three or more felony offenses); La. R.S. 15:574.4(A)(2) (allowing a person serving a term or terms of imprisonment of 30 years or more with or without benefit of parole to be parole eligible after serving 20 years and reaching the age of 45, but specifically making this provision inapplicable to persons convicted under La. R.S. 14:64, i.e., armed robbery). There is no provision allowing parole eligibility for a person convicted of armed robbery, nor has the legislature provided any exception from that provision for juvenile defendants. The trial court ordered all sentences to run consecutively at the initial sentencing, and these sentences were affirmed on appeal and no application for relief was made to this Court. Upon defendant’s motion to correct an illegal sentence, the trial court felt compelled under Graham to make defendant parole eligible on the armed robbery convictions and to make the armed robbery sentences concurrent with the aggravated kidnaping sentence. However, nothing in Graham prohibits a ten-year sentence without parole, four ten-year consecutive sentences without parole, or four ten-year consecutive sentences from running consecutive to a life sentence that has been amended to give a defendant 1j ¡¡parole eligibility at age 46.[6] In fact, we see nothing in Graham that even applies to sentences for multiple convictions, as Graham conducted no analysis of sentences for multiple convictions and provides no guidance on how to handle such sentences. As our state legislature has provided for these sentences, as it has the constitutional authority to do, we have no authority, absent a disproportionality review not possible or requested here, to amend these sentences. In our view, Graham does not prohibit consecutive term of year sentences for multiple offenses committed while a defendant was under the age of 18, even if they might exceed a defendant’s lifetime, and, absent any further guidance from the United States Supreme Court, we defer to the legislature *342 which has the constitutional authority to authorize such sentences.
CONCLUSION
In Graham, the Supreme Court ruled that the Eighth Amendment prohibits the imposition of a sentence of life without parole upon an offender who commits a non-homicide offense when he is under the age of 18. The disputed issue in this case involves neither a life sentence, nor one non-homicide offense. In accordance with Graham, Shaffer and now La. R.S. 15:574.4(D) mandate that a juvenile’s life sentence without parole be amended so that he is parole eligible on the life sentence after a certain amount of time; therefore, the trial court correctly amended defendant’s life sentence. However, nothing in Graham addresses a defendant convicted of multiple offenses and given term of year sentences, that, if tacked on to the life sentence parole eligibility date, equate to a possible release date when the defendant reaches the age of 86. In the absence of further direction and guidance from the United States Supreme Court, we find the trial court erred in amending defendant’s four ten-year sentences for armed robbery and removing the parole eligibility | ^restrictions on those sentences. We remand this matter to the trial court for amendment of defendant’s sentences in accordance with this opinion.
DECREE
For the reasons stated herein, the judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
While Justice JEFFERSON D. HUGHES III was not on the Court at the time this case was argued, he now sits as an elected Justice and is participating in the rendering of this opinion.

 While Justice Jefferson D. Hughes III was not on the Court at the time this case was argued, he now sits as an elected Justice and is participating in the rendering of this opinion.

. Under newly enacted La. R.S. 15:574.4(D), a juvenile defendant sentenced to life without parole for a non-homicide offense is now eligible for parole consideration after serving 30 years of that life sentence. See discussion at pages 12-13, infra.

. The present case is complicated by the difficulty of determining precisely how much time the defendant will be obligated to serve before becoming eligible for parole or release (and thus whether his sentences can be construed as the functional equivalent of life) when this Court reverses the district court to the extent it removed the prohibition of parole eligibility from the four 10-year sentences for armed robbery. Generally, the Department of Public Safety and Corrections administers the standards governing parole eligibility and determines whether a particular inmate is eligible for parole consideration by the Board of Parole. In determining parole eligibility dates, the Department looks to the applicable statutory criteria set out in La. R.S. 15:574.4, and "administers these standards and criteria by applying them, as well as other relevant statutes and interpretative jurisprudence, to determine whether or not a particular inmate is parole eligible, i.e., eligible for parole consideration by the board.” According to the Department, defendant is considered to first serve the life sentence. In this case, the Department has set a parole eligibility date of 2033. It is unclear how this date was reached.

. Bunch v. Smith, 685 F.3d 546 (6th Cir.2012) (a state court's determination that a juvenile petitioner's 89-year sentence did not violate the Eighth Amendment was reasonable), cert. denied, Bunch v. Bobby, 569 U.S. -, 133 S.Ct. 1996, 185 L.Ed.2d 865, 2013 WL 1704719 (April 22, 2013); Goins v. Smith, 2012 WL 3023306 (N.D.Ohio 2012) (84-year sentence not unconstitutional citing Bunch); Gridine v. State, 89 So.3d 909 (Fla.App. 1st Dist.2011) (declined to apply Graham to a 70-year sentence), cert. granted, 103 So.3d 139 (Fla.2012); Walle v. State, 99 So.3d 967 (Fla.App. 2nd Dist.2012) (effective total sentence of 92 years did not constitute cruel and unusual punishment or fall within the ruling of Graham); Thomas v. State, 78 So.3d 644 (Fla.App. 1st Dist.2011)(concurrent 50-year sentences did not violate Graham); Henry v. State, 82 So.3d 1084 (Fla.App. 5th Dist.2012) *337 (90-year sentence constitutional under Graham, refusing to apply Graham to term of years sentence without further guidance from United States Supreme Court), review granted, 107 So.3d 405 (Fla.2012); Manuel v. State, 48 So.3d 94 (Fla.App. 2nd Dist.2010) (applying Graham to juvenile offender’s sentence of life without parole, but holding 40-year sentence on second conviction constitutional), cert. denied, - U.S. -, 132 S.Ct. 446, 181 L.Ed.2d 259 (2011); Silva v. McDonald, 891 F.Supp.2d 1116 (C.D.Cal.2012) (sentence of 40 years to life resulting in parole eligibility at age 60 does not violate Graham); Adams v. State, 288 Ga. 695, 707 S.E.2d 359 (Ga.2011)(sentence of mandatory 25 years followed by life on probation for aggravated molestation of a four-year old does not implicate categorical Eighth Amendment restriction under Graham, nor is it grossly disproportionate for particular crime); Middleton v. State, 313 Ga.App. 193, 721 S.E.2d 111 (Ga.Ct.App.2011) (aggregate sentence of 30 years without parole for multiple convictions did not implicate Graham because the defendant received a term of years sentence), cert. denied, - U.S. -, 133 S.Ct. 867, 184 L.Ed.2d 679 (2013); State v. Kasic, 228 Ariz. 228, 265 P.3d 410 (Ariz.App.Div.2 2011) (Graham did not apply to aggregate sentence of 139.75 years for 30 convictions); Bell v. Haws, 2010 WL 3447218 (C.D.Cal.2010) (sentence of 54 years without parole does not violate Graham because Graham only applies to life sentences), vacated for failure to exhaust state remedies, 462 Fed.Appx. 692 (9th Cir.2011).

. Floyd v. State, 87 So.3d 45 (Fla.App. 1st Dist.2012) (two consecutive 40-year sentences violated Graham because functional equivalent of life sentence without parole); United States v. Mathurin, 2011 WL 2580775 (S.D.Fla.2011) (mandatory minimum federal sentence of 307 years imprisonment for a juvenile was unconstitutional, sentence amended to 492 months); People v. Caballero, 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291 (2012) (concluding that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender’s natural life expectancy constitutes cruel and unusual punishment"); State v. Macon, 46,696 (La.App. 2 Cir. 1/25/12), 86 So.3d 662, 666-67 (finding that serving 50 years before parole consideration violated Graham because the offender would be 67 at that time and would therefore have no "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation....” and ordering his prison master revised in accordance with the directives of Shaffer, infra, making him immediately eligible for parole consideration), writ denied, 90 So.3d 411 (La.5/25/12).

. The petition for a writ of certiorari was filed in Bunch on November 5, 2012. After the warden, David Bobby, waived his right to file a response, on January 4, 2013 the Supreme Court formally requested a response from him to be due February 4, 2013. On January 14,2013, the Supreme Court issued an order extending the deadline to March 18, 2013, and Warden Bobby filed his response on that date. All of this occurred as the case sub judice was pending before us, and based on the Supreme Court’s apparent interest in the issue involved in both cases, we decided to wait until the Supreme Court took action on the writ of certiorari in the Bunch case. As the Supreme Court has denied the writ of certiorari, we now issue our opinion.

. It is our understanding that the Department will consider the four ten-year sentences to begin running at that time.