Kennedy, J.,
dissenting.
{¶ 146} Because the court of appeals was without authority to consider the motion for delayed reconsideration and because Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), does not extend to a juvenile offender sentenced to consecutive, fixed prison terms for multiple nonhomicide offenses, I dissent. I would affirm the judgment of the court of appeals.
{¶ 147} While I agree with the majority’s statement of the facts and procedural history of this case, it is important to emphasize several dates and court decisions.
{¶ 148} Appellant, Brandon Moore, was convicted in 2002. He appealed his convictions several times, but on March 24, 2009, the court of appeals issued a judgment that affirmed his resentencing. State v. Moore, 7th Dist. Mahoning No. 08 MA 20, 2009-Ohio-1505, 2009 WL 825758 (“Moore III”). Moore did not appeal that judgment. On September 16, 2013, approximately four years after his convictions became final and nearly three years after Graham was decided, Moore filed a motion for delayed reconsideration of Moore III for the purpose of arguing that Graham applied to his sentence.
I. Delayed Reconsideration of Moore III
{¶ 149} An appellate court’s decision regarding an application for reconsidera- . tion of its judgment is reviewed under an abuse-of-discretion standard. Reichert v. Ingersoll, 18 Ohio St.3d 220, 222, 480 N.E.2d 802 (1985). An “ ‘ “abuse of discretion” connotes more than an error of law or of judgment; it implies that the court’s attitude is unreasonable, arbitrary or unconscionable.’ ” State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs., 125 Ohio St.3d 112, 2010-Ohio-1199, 926 N.E.2d 600, ¶ 43 (Pfeifer, J., dissenting), quoting State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).
{¶ 150} “Courts of appeal[s] have jurisdiction to reconsider their judgments on a timely motion filed pursuant to App.R. 26 until an appeal as of right is filed in this court, or this court rules on a motion to certify the record.” State ex rel. LTV Steel Co. v. Gwin, 64 Ohio St.3d 245, 249, 594 N.E.2d 616 (1992), citing State v. Murphy, 49 Ohio St.3d 293, 551 N.E.2d 1292 (1990), and Cincinnati v. Alcorn, 122 Ohio St. 294, 171 N.E. 330 (1930). And “by virtue of the jurisdiction conferred by Section 3(B), Article IV, Ohio Constitution, courts of appeals also have inherent authority, in the furtherance of justice, to reconsider their judgments sua sponte.” LTV Steel at 249, citing Tuck v. Chappie, 114 Ohio St. 155, 151 N.E. 48 (1926).
*598 {¶ 151} However, under Article IV, Section 3(A)(3) of the Ohio Constitution, judgments of the courts of appeals “are final unless appealed as of right or by a request for [the Supreme Court’s] discretionary review pursuant to Section 2(B)(2), Article IV, Ohio Constitution.” LTV Steel at 249. “[I]f no such appeal is filed, the judgment is binding and no longer subject to the court of appeals’ jurisdiction to reconsider.” Id. at 249-250, citing Wigton v. Lavender, 9 Ohio St.3d 40, 43, 457 N.E.2d 1172 (1984).
{¶ 152} Under App.R. 26(A)(1), a party may seek reconsideration no later than ten days after the clerk of courts has mailed the judgment or order to the parties. However, applying App.R. 14(B), courts of appeals have held that upon ‘“a showing of extraordinary circumstances,’” they may accept an application for reconsideration beyond the ten-day limit. (Emphasis added.) E.g., Rice v. Rice, 7th Dist. Columbiana No. 2001-CO-28, 2002-Ohio-5032, 2002 WL 31115187, ¶ 2, quoting App.R. 14(B). But under LTV Steel, no court of appeals can reconsider its judgment if the time for appealing that judgment to this court has expired and no appeal was filed.
{¶ 153} On March 24, 2009, the court of appeals affirmed the trial court’s resentencing of Moore for his 2002 convictions. Under LTV Steel, the court of appeals had jurisdiction to reconsider its judgment in Moore III until Moore appealed that judgment to this court or the 45-day appeal period expired. Moore did not appeal Moore III and did not file his application for reconsideration until September 16, 2013, more than four years after Moore III was decided and approximately three years after Graham was decided. Therefore, the court of appeals lacked authority to reconsider Moore III. Accordingly, the court of appeals did not abuse its discretion in denying Moore’s application for reconsideration.
II. Graham Is Distinguishable
{¶ 154} It is important to understand what the United States Supreme Court decided and what it did not decide in Graham, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825. In Graham, the juvenile defendant was found guilty of armed burglary and attempted armed robbery and ultimately sentenced to life imprisonment for the armed burglary and 15 years for the attempted armed robbery. Because Florida had abolished its parole system, Graham’s life sentence was a sentence for life without parole. Id. at 57.
{¶ 155} The court in Graham did not decide whether the imposition of consecutive, fixed-term prison sentences for multiple nonhomicide offenses that result in a lengthy aggregate sentence violate the Eighth Amendment. As pointed out in Justice Alito’s dissent in the case: “[Graham ] holds only that Tor a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole.’ * * * Nothing in the Court’s opinion affects *599 the imposition of a sentence to a term of years without the possibility of parole.” (Emphasis sic.) Id. at 124 (Alito, J., dissenting), quoting id. at 74.
III. An Invitation to Extend Graham Was Denied
{¶ 156} One of Moore’s codefendants, Chaz Bunch, was convicted of aggravated robbery, three counts of rape, three counts of complicity to commit rape, kidnapping, conspiracy to commit aggravated robbery—all with firearm specifications—and aggravated menacing. State v. Bunch, 7th Dist. Mahoning No. 02 CA 196, 2005-Ohio-3809, 2005 WL 1523844. Similar to the trial judge in Moore’s case, the trial judge who sentenced Bunch imposed maximum, consecutive sentences on each offense, except for the menacing charge, which resulted in an aggregate 115-year prison term. The court of appeals affirmed Bunch’s convictions (except for his conspiracy conviction) but remanded for resentencing, resulting in a new aggregate sentence of 89 years in prison. The court of appeals affirmed the new sentence, State v. Bunch, 7th Dist. Mahoning No. 06 MA 106, 2007-Ohio-7211, 2007 WL 4696832, and we denied Bunch’s discretionary appeal, State v. Bunch, 118 Ohio St.3d 1410, 2008-Ohio-2340, 886 N.E.2d 872.
{¶ 157} Thereafter, Bunch filed a petition for a writ of habeas corpus in federal district court, alleging that his 89-year sentence was cruel and unusual punishment in violation of the Eighth Amendment. Bunch v. Smith, N.D.Ohio No. 1:09 CV 901, 2010 WL 750116 (Mar. 2, 2010). Graham was pending in the Supreme Court at the time, but the federal district court declined to stay consideration of Bunch’s petition, finding Graham distinguishable because Graham involved a life sentence without the possibility of parole. Id. at *2. Consequently, the court dismissed Bunch’s petition. Id. at *3.
{¶ 158} Thereafter, Bunch appealed to the Sixth Circuit Court of Appeals. Bunch v. Smith, 685 F.3d 546 (6th Cir.2012). While his appeal was pending, the Supreme Court decided Graham.
{¶ 159} A writ of habeas corpus will issue only if the holding at issue is “ ‘contrary to, or involve[s] an unreasonable application of, clearly established Federal law.’ ” Greene v. Fisher, 565 U.S. 34, 40, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011), quoting 28 U.S.C. 2254(d)(1). “[Cjlearly established Federal Law” means the law that existed at the time of “the last state-court adjudication on the merits.” Id.
{¶ 160} Even though Graham was not decided until after Bunch had exhausted his state appeals, the Sixth Circuit nevertheless determined that an argument could be made that Graham applies retroactively on collateral review under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Bunch v. Smith at 550. However, the court determined that it did not need to address *600 that “threshold question” because even if the court assumed that Graham did apply retroactively, “[it] is not clearly applicable to [Bunch].” Bunch v. Smith at 550. The Sixth Circuit’s reasoning in reaching this decision is persuasive support for the conclusion that Graham does not extend to Moore’s case.
{¶ 161} The Sixth Circuit recognized that while both cases involved juveniles who committed nonhomicide offenses, Graham involved a sentence of life in prison while Bunch’s case involved “consecutive, fixed-term sentences—the longest of which was 10 years—for committing multiple nonhomicide offenses.” Bunch v. Smith, 685 F.3d at 551. The court observed that Graham “made it clear that [it] ‘concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.’ ” (Emphasis sic.) Bunch v. Smith at 551, quoting Graham, 560 U.S. at 63, 130 S.Ct. 2011, 176 L.Ed.2d 825. The Sixth Circuit pointed out that Graham’s analysis confirms this limitation by “not encompassing] consecutive fixed-term sentences”: Graham “did not analyze sentencing laws or actual sentencing practices regarding consecutive, fixed-term sentences for juvenile nonhomicide offenders.” Bunch v. Smith at 551-552. The Sixth Circuit added, “ ‘If the [United States] Supreme Court has more in mind, it will have to say what that is.’ ” Id. at 552, quoting Henry v. State, 82 So.3d 1084, 1089 (Fla.App.2012), quashed, 175 So.3d 675 (Fla.2015).
(¶ 162} Bunch appealed to the United States Supreme Court, which denied certiorari. Bunch v. Bobby, 569 U.S. -, 133 S.Ct. 1996, 185 L.Ed.2d 865 (2013).
IV. Other Jurisdictions Recognize that Graham’s Holding Is Limited
{¶ 163} While the majority points to courts in some jurisdictions that have extended Graham to cases involving consecutive, fixed-term sentences for multiple nonhomicide offenses, courts in other jurisdictions have not done so. The Louisiana Supreme Court has held that Graham does not apply to a juvenile offender who has been sentenced to multiple sentences that, when aggregated, result in a lengthy term-of-years sentence. And courts in Tennessee, Arizona, and Virginia have all recognized that Graham’s holding is limited to cases in which the defendant received an actual life sentence without the possibility of ■parole for a nonhomicide offense committed while a juvenile.

A. Louisiana

{¶ 164} The majority cites State ex rel. Morgan v. State, 217 So.3d 266, 2016 WL 6125428 (La.2016), a Louisiana Supreme Court decision, in support of its holding that Graham applies to Moore’s sentence. As the majority asserts, in Morgan, the court held that “the categorical rule in Graham applies to the defendant’s 99-year sentence without parole insofar as it is the functional equivalent of a life sentence and denies him a meaningful opportunity for release, *601 to which he is entitled.” Morgan at 276-277. However, noting that Morgan was sentenced to a single 99-year term, the court distinguished the case from State v. Brown, 118 So.3d 332 (La.2013), in which it had addressed the application of Graham to a different sentence three years earlier. Morgan at 271-272.
{¶ 165} In Brown, a juvenile was convicted of aggravated kidnapping and four counts of armed robbery. The trial court imposed a mandatory life sentence for aggravated kidnapping and ten years in prison for each of the armed-robbery convictions to be served consecutively for 40 additional years, without the possibility of parole for any of the convictions.
{¶ 166} Brown filed a motion challenging his sentence as illegal under Graham. The trial court agreed, holding that Brown was eligible for parole on all five convictions, and the intermediate appellate court affirmed. The Louisiana Supreme Court “granted the State’s writ application to consider its argument that while the district court properly eliminated the parole restriction on the life sentence, nothing in Graham authorized it to amend [Brown’s] four 10-year armed robbery sentences.” Brown at 334-335. The court recognized that following Graham, the legislature had amended a state sentencing statute in order to allow inmates serving a life sentence without the possibility of parole for a nonhomicide offense committed while a juvenile to become eligible for parole after serving 30 years. Brown at 341.
{¶ 167} The court then considered whether Graham applied to Brown’s sentence. Brown was 16 years old at the time of his offenses. Therefore, Brown would not become eligible for parole until at least age 86—once he had served 30 years for the kidnapping conviction and ten years for each of the four armed-robbery convictions. Brown, 118 So.3d at 342. The court stated:
In our view, Graham does not prohibit consecutive term of year sentences for multiple offenses committed while a defendant was under the age of 18, even if they might exceed a defendant’s lifetime, and, absent any further guidance from the United States Supreme Court, we defer to the legislature which has the constitutional authority to authorize such sentences.
Brown at 341-342.
{¶ 168} The Brown court concluded that “nothing in Graham addresses a defendant convicted of multiple offenses and given term of year sentences, that, if tacked on to the life sentence parole eligibility date, equate to a possible release date when the defendant reaches the age of 86.” Brown at 342.
{¶ 169} The court in Morgan distinguished Brown:
*602 Brown was convicted of five offenses resulting in five consecutive sentences which, when aggregated, resulted in a term pursuant to which he would have no opportunity for release; here, the defendant was convicted of a single offense and sentenced to a single term which affords him no opportunity for release. In declining to extend Graham to modify any of Brown’s term-of-years sentences, we were most influenced by the fact that his actual duration of imprisonment would be so lengthy only because he had committed five offenses. * * * In contrast, any concern about a policy that would afford an opportunity for parole to defendants convicted of multiple offenses is not implicated here.
(Emphasis added.) Morgan, 217 So.3d 266, 2016 WL 6125428, at 271-272. Therefore, Brown continues to stand for the proposition that Graham does not apply to a juvenile offender who has been sentenced to multiple sentences that, when aggregated, result in a lengthy term-of-years sentence. Similar to the juvenile defendant in Brown, Moore was a juvenile offender who had been sentenced to multiple sentences that, when aggregated, result in a lengthy term-of-years sentence. Consequently, contrary to the majority’s assertion, Louisiana Supreme Court precedent is still consistent with the conclusion that Graham is not applicable to Moore’s lengthy term-of-years sentence.

B. Tennessee

{¶ 170} In State v. Merritt, the defendant pleaded guilty to nine counts of rape of a child committed when the defendant was 17 years old. Tenn.Crim.App. No. M2012-00829-CCA-R3CD, 2013 WL 6505145 (Dec. 10, 2013). The trial court imposed a 25-year prison term for each of the nine offenses to be served consecutively, for an aggregate prison sentence of 225 years.
{¶ 171} On appeal, Merritt argued that his prison sentence was a de facto life sentence without the possibility of parole and constituted cruel and unusual punishment under Graham, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825. Although the Tennessee Court of Criminal Appeals reversed the sentence after determining that it was excessive, the court rejected Merritt’s argument that his sentence was unconstitutional under Graham. Merritt at *6. The court reasoned:
Although the Defendant’s effective 225-year sentence is the equivalent of life imprisonment, the sentence does not violate Graham’s specific holding because he was not sentenced to life imprisonment without the possibility of parole. We conclude that Graham applies only to juveniles sentenced to life imprisonment without the possibility of parole for nonhomicide offenses and that the Defendant is not entitled to relief on this basis.
*603 (Emphasis added.) Merritt at *6.

C. Arizona

{¶ 172} In State v. Kasic, the defendant was found guilty of, among other offenses, six arsons and one attempted arson—some of which he committed at the age of 17—and the court imposed an aggregate prison term of 139.75 years. 228 Ariz. 228, 265 P.3d 410 (Ariz.App.2011). On appeal, Kasic argued that the “reasons underlying the Court’s decision in Graham are applicable to juveniles, such as [Kasic], serving a term-of-years sentence exceeding the juvenile’s life expectancy.” Kasic at ¶ 20. The Arizona Court of Appeals disagreed, reasoning that Graham “ ‘concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.’ ” Kasic at ¶ 20, quoting Graham at 63. The court gleaned further support for its conclusion in' recognizing that “[Graham] emphasized ‘that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life.’ ” Kasic at ¶ 20, quoting Graham at 75.

D. Virginia

{¶ 173} In Vasquez v. Commonwealth, two juveniles, Vasquez and Valentin, robbed and repeatedly sexually assaulted a woman. 291 Va. 232, 781 S.E.2d 920 (2016), cert. denied, — U.S. -, 137 S.Ct. 568, 196 L.Ed.2d 448 (2016). After a bench trial, the court found both defendants guilty of multiple criminal offenses and imposed multiple term-of-years sentences. Ultimately, Vasquez received an aggregate sentence of 133 years in prison and Valentin received an aggregate sentence of 68 years in prison. Vasquez and Valentin appealed to the Virginia Court of Appeals, which denied relief to both.
{¶ 174} Vasquez and Valentin appealed to the Virginia Supreme Court, arguing that their sentences constituted cruel and unusual punishment and urging the court to “expand Graham’s prohibition of life-without-parole sentences to nonlife sentences that, when aggregated, exceed the normal life spans of juvenile offenders.” Vasquez at 241. The court refused to extend Graham, noting that Graham applied “only to ‘the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.’ ” (Emphasis added in Vasquez.) Id., quoting Graham, 560 U.S. at 82, 130 S.Ct. 2011, 176 L.Ed.2d 825. The court recognized that both Vasquez and Valentin were subject to multiple sentences and that “[t]he only reason that the aggregate sentences exceeded their life expectancies was because they committed so many separate crimes. These cases *604 are nothing like Graham, which involved a single crime resulting in a single life-without-parole sentence.” Vasquez at 243. The court concluded:
We find no basis for declaring the aggregate sentences imposed on Vasquez and Valentin to be cruel and unusual under the Eighth Amendment. Nothing in Graham dictates that multiple sentences involving multiple crimes be treated, for Eighth Amendment purposes, in exactly the same manner as a single life-without-parole sentence for a single crime.
Id. at 251.
V. Graham’s Analysis Is Insufficient to Justify Extending Its Holding to Consecutive, Fixed-Term Sentences for Multiple Nonhomicide Offenses
{¶ 175} Even assuming for the sake of argument that Graham could apply to consecutive, fixed-term sentences for multiple nonhomicide offenses, there are practical problems that require additional inquiry and might preclude the extension of Graham.

A. Determining Life Expectancy Is a Slippery Slope

{¶ 176} The majority uses life-expectancy data reported by the Centers for Disease Control (“CDC”) to conclude that Moore will probably die before he becomes eligible to be released. But there are a myriad of sources for determining life expectancy. For example, in Boneshirt v. United States, the defendant was convicted of a murder committed as a juvenile and sentenced to 48 years in prison. D.S.D. No. CIV 13-3008-RAL, 2014 WL 6605613 (Nov. 19, 2014). Boneshirt claimed that his sentence was a de facto life sentence and therefore unconstitutional under Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (sentencing a juvenile offender who commits murder to a mandatory life sentence violates the Eighth Amendment). In exploring whether Boneshirt’s sentence was a de facto life sentence, the court considered numerous sources, including statistics from the United States Sentencing Commission, Internal Revenue Service actuarial tables, and Social Security actuarial tables, as well as a mortality study showing particularly low life expectancies for Native American males in certain South Dakota counties. The court noted that while it is “easy” to view a 100-year sentence as a de facto life sentence, Boneshirt’s 48-year sentence, which he began serving at age 18, “makes for a more difficult answer.” Boneshirt at *9. Undoubtedly, determining whether a lengthy term-of-years aggregate sentence is a de facto life sentence will be a difficult, case-by-case determination.
*605 {¶ 177} Moreover, data can be used only to estimate one’s life expectancy, as there are numerous factors that can affect an individual’s actual lifespan. For example, according to the CDC, life expectancy is at least ten years shorter for smokers than for nonsmokers. CDC, Tobacco-Related Mortality, http://www. cdc.gov/tobacco/data_statistics/fact_sheets/health_effects/tobacco_related_ mortality/ (accessed Oct. 18, 2016). Would courts need to take such personal factors into account when determining life expectancy?
{¶ 178} Similarly, as imprisoned juveniles grow older, some will encounter new health issues that could shorten their lives. Would courts have to periodically reevaluate each juvenile’s health and lifestyle for the purpose of re-estimating the juvenile’s life expectancy?
{¶ 179} There are many sources for life-expectancy data and many factors that affect an individual’s life expectancy, and neither Graham nor the majority have explored these issues.
B. Determination of National Consensus as Required by Graham’s Categorical-Rule Analysis
{¶ 180} The categorical-rule analysis employed in Graham included two steps. 560 U.S. at 61, 130 S.Ct. 2011, 176 L.Ed.2d 825.
{¶ 181} The first step required the court to determine whether there was a national consensus against sentencing juvenile offenders who commit nonhomi-cide offenses to a sentence of life in prison without parole, and the second step required the court to apply its own Eighth Amendment decisions to determine whether that sentencing practice violated the Eighth Amendment. Id. at 61-62. The results of the first step of the analysis, national consensus, while “not [] determinative of whether a punishment is cruel and unusual is ‘entitled to great weight.’ ” Id. at 67, quoting Kennedy v. Louisiana, 554 U.S. 407, 434, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008). The court in Graham determined whether there was a national consensus against sentencing a juvenile who committed a nonhomi-cide offense to life in prison without parole, not whether there was a national consensus against sentencing a defendant who committed multiple nonhomicide offenses while a juvenile to consecutive, fixed prison terms that exceed the offender’s life expectancy. Arguably, consideration of whether there is a national consensus against the latter type of sentence could yield a different result. Without this analysis, Graham cannot be extended to consecutive, fixed-term sentences for multiple nonhomicide offenses like Moore’s. The majority opinion never even addresses the first step of the categorical-rule analysis employed in Graham.
*606 VI. The Separation-of-Powers Doctrine Grants the General Assembly Sole Authority to Enact Sentencing Guidelines
{¶ 182} The United States Supreme Court “leave[s] to the State the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences.” Ford v. Wainwright, 477 U.S. 399, 416, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (plurality opinion). It is well settled that “[t]he power to defíne and classify and prescribe punishment for felonies committed within the state is lodged in the General Assembly of the state.” State v. O’Mara, 105 Ohio St. 94, 136 N.E. 885 (1922), paragraph one of the syllabus, overruled in part on other grounds, Steele v. State, 121 Ohio St. 332, 333, 168 N.E. 846 (1929). Accordingly, “the authority for a trial court to impose sentences derives from the statutes enacted by the General Assembly.” State v. Bates, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 12.
{If 183} In determining whether imposing a life sentence on a juvenile nonho-micide offender violated the Eighth Amendment, the court in Graham looked at developments in brain “science” and concluded that juveniles are different from adults in that juveniles are “ ‘more vulnerable or susceptible to negative influences and outside pressures, including peer pressure’; and their characters are ‘not as well formed.’ ” 560 U.S. at 68, 130 S.Ct. 2011, 176 L.Ed.2d 825, quoting Roper v. Simmons, 543 U.S. 551, 569-570, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Pursuant to this “science,” the court concluded that “ ‘[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.’ ” Id. at 68, quoting Roper at 573. The court also considered “penological justifications” (e.g., retribution, deterrence, incapacitation, rehabilitation) for imposing a life sentence on a juvenile nonhomicide offender. Id. at 71.
{¶ 184} While I agree that the science and penological considerations are relevant in formulating a sentence!, these subjects are for the General Assembly— not the courts—to debate and weigh in establishing sentencing guidelines for juvenile offenders. See O’Mara, 105 Ohio St. 94, 136 N.E. 885, at syllabus. To do so here by extending Graham to consecutive, fixed-term sentences for multiple nonhomicide offenses will effectively invalidate the sentences imposed for certain offenses, which will have the effect of permitting an offender to commit some offenses “for free.”
{¶ 185} The General Assembly has made a policy decision creating a bindover scheme for a juvenile defendant who commits one of a multitude of types of offenses at a certain age. R.C. 2152.10. Therefore, it is the General Assembly that must consider relevant factors, such as the growing body of science and pronouncements by the United States Supreme Court, and promulgate appropri *607 ate sentencing guidelines for those juveniles whom the General Assembly has deemed must be subjected to adult consequences.
{¶ 186} And it is this court’s obligation to educate Ohio judges who would impose consecutive, fixed-term sentences for multiple nonhomicide offenses committed by a juvenile about the vulnerability and susceptibility of juveniles to negative influences and peer pressure, the science of brain development and the growing body of evidence that juveniles’ characters are not as well formed as those of adults, and the law as enunciated by the United States Supreme Court that a trial judge can fashion an individualized sentence to meet the overriding purposes of felony sentencing, see R.C. 2929.11.
{¶ 187} While I would gladly add my voice to the conversation supporting the creation of separate sentencing guidelines for juvenile offenders who are bound over to the adult system, I cannot join today’s majority when there is no basis in law and when to do so, in my opinion, would violate the separation-of-powers doctrine, which “[t]his court has repeatedly affirmed” is embedded in the Ohio Constitution, State ex rel. Bray v. Russell, 89 Ohio St.3d 132, 134, 729 N.E.2d 359 (2000).[4]
VII. Conclusion
{¶ 188} Because the court of appeals was without authority to consider the application for delayed reconsideration and because Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, does not extend to a juvenile offender who is sentenced to consecutive, fixed prison terms for multiple nonhomicide offenses, I dissent. I would affirm the judgment of the court of appeals.
O’Donnell, J., concurs in the foregoing opinion.

. During the 131st session of the General Assembly, the legislature considered a bill to “enact section 2967.132 of the Revised Code to provide special parole eligibility dates for persons with an indefinite or life sentence imposed for an offense committed when the person was less than 18 years of age.” Am.H.B. No. 521, at 1.