PD-0118-15

PD-0118-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/29/2015 6:21:14 PM
Accepted 2/4/2015 10:01:07 AM
ABEL ACOSTA
CLERK

NO. _____

IN THE COURT OF CRIMINAL APPEALS

---

**CASEY DEMON CARMON**
*Petitioner*

vs.

**STATE OF TEXAS**
*Respondent*

---

No. 01-12-01124-CR
in the First Court of Appeals
On Appeal from the 174TH District Court of
Harris County, Texas
Cause No. 1243459

---

**PETITION FOR DISCRETIONARY REVIEW**

---

FILED IN
COURT OF CRIMINAL APPEALS

February 4, 2015

ABEL ACOSTA, CLERK

Patrick F. McCann
SBOT: 00792680
909 Texas Ave., Ste. 205
Houston, Texas 77002
Ph: (713) 223-3805
Fax: (281) 667-3352
writlawyer@justice.com

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to the Texas Rules of Appellate Procedure the following is presented to the Court.

Presiding Judge, Hon. Ruben Guerrero, 174th District, Harris County, Texas

Counsel for Appellant, as on cover
**Appellant, CASEY DEMON CARMON**, in the custody of the Texas Department of Criminal Justice

ATTORNEYS FOR THE STATE OF TEXAS ON TRIAL:

MS. TRACI BENNETT              MR. MATTHEW PENEGUY
SBOT NO. 75002489             SBOT NO. 24049367

Assistant District Attorneys
1201 Franklin
Houston, Texas 77002

ATTORNEYS FOR THE DEFENDANT ON TRIAL:

MR. ALVIN NUNNERY            MR. BRENNEN DUNN
SBOT NO. 15141800            SBOT NO. 24075487
909 Texas, Suite 205          2306 Blodgett St.
Houston, Texas 77002          Houston, Texas 77004

ATTORNEY FOR DEFENDANT ON APPEAL:

MR. PATRICK F. McCANN
SBOT NO. 00792680
909 Texas, Suite 205
Houston, Texas 77002
ATTORNEYS FOR THE STATE ON APPEAL:

Alan Curry
Heather Hudson
Patricia Rae R. Lykos
1201 Franklin St Ste. 600
Houston, Texas 77002

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ..........................................................ii

TABLE OF CONTENTS …………………………………….......………..iii

INDEX OF AUTHORITIES ………………………….…….…....…….........…….iv

STATEMENT REGARDING ORAL ARGUMENT..………….….….….…......…….2

STATEMENT OF PROCEDURAL HISTORY…………………….....................……2

QUESTION PRESENTED FOR REVIEW …………………….….…......….....2

REASONS FOR REVIEW …………………….…….………………...…….…….....3

CONCLUSION………………………………………………….…..…11

PRAYER……………………………………………………......……….....……12

CERTIFICATE OF SERVICE ..........................................................................13

CERTIFICATE OF COMPLIANCE………………………......………………......13

APPENDIX…………………………………………...…………………………..14

# INDEX OF AUTHORITIES

Cases:                                                                      Page(s):

*Floyd v. State,* 87 So. 3d 45 (Fla. Dist. Ct. App. 2012).............................................8

*Graham v. Florida,* 130 S. Ct. 2011 (2010)......................................................7-9, 11

*Miller v. Alabama*, 132 S.Ct. 2455 (2012)......................................................2, 7-11

*People v. Caballero*, 282 Pacific 3d 291, 293, 294 (Cal. 2012)...............................9

*State ex rel Landry v. State*, 106 So. 3d 106 (La. 2013)...........................................9

*State v. Brown*, 118 So. 3d 332 (La. 2013)................................................................8

*State v. Null*, 836 N.W. 2d 41, 45, 72 (Iowa 2013)...........................................10-11

*States v. Taveras*, 436 F. Supp. 2d 493, 500 (E.D.N.Y. 2006)................................4

*Thomas v. State,* 78 So. 3d 644 (Fla. Dist. Ct. App. 2011)......................................8

NO. _____

IN THE COURT OF CRIMINAL APPEALS

**CASEY DEMON CARMON**
*Petitioner*
vs.

**STATE OF TEXAS**
*Respondent*

No. 01-12-01124-CR
in the First Court of Appeals
On Appeal from the 174TH District Court of
Harris County, Texas
Cause No. 1243459

**PETITION FOR DISCRETIONARY REVIEW**

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, Casey D. Carmon, Petitioner in the above-styled and numbered cause, by and through his Counsel of Record, PATRICK F. McCANN, and pursuant to TEX.R.APP.P. 70.1, respectfully submits this Petition for Discretionary Review, and in support thereof would show this Honorable Court the following:

## I.
## STATEMENT REGARDING ORAL ARGUMENT

Petitioner Casey D. Carmon requests oral argument in this case. This is a published decision on a matter of first impression in Texas on an important constitutional question under *Miller v. Alabama*, 132 S.Ct. 2455 (2012). The Court would benefit from oral argument.

## II.
## STATEMENT OF PROCEDURAL HISTORY

The Petitioner was charged in Harris County in the 174th District Court, Hon. Ruben Guerrero presiding, with Capital Murder. Casey D. Carmon pleaded not guilty and was convicted by the jury, resulting in a mandatory life sentence, without the possibility of parole.

The Court of Appeals affirmed Petitioner's conviction in a published opinion on December 30, 2014. [See attached Appendix]. This Petition for Discretionary Review follows.

## III.
## QUESTION PRESENTED FOR REVIEW

Does accumulation sentencing order on a juvenile that creates a de facto life without parole sentence violate Miller v. Alabama?

IV.
REASONS FOR REVIEW

The trial court, at the urging of the State, "stacked" the matters in this case so that they could run consecutively. [See Judgment and sentence, the trial court's handwritten note, and the oral pronouncement, Vol VII, pg 47 of Reporter's record] Mr. Carmon was already serving a sentence of 99 years for another aggravated robbery. See *Carmon v. State*, memorandum opinion, Cause #14-11-00334-CR, slip op. p1, p3].

The trial court and the State had already agreed to a sentence of life in prison with parole eligibility at 40 years, in violation of the Texas Penal Code. By stacking the sentence on top of the preceding one, which under Texas law would be eligible for parole at 30 years, the State created a sentencing scheme for a juvenile which would result in, minus the years Mr. Carmon had spent in custody, a potential parole date *when his age would reach approximately 85*. This is longer than the average life expectancy of the American male, let alone the male in prison, let alone Texas prisons. In a recent report from the Organization for Economic Cooperation and Development as relayed by the Huffington Post, the average life expectancy was revealed to be the following:

3

Life expectancy in the United States ranks 26th out of the 36 member countries of the Organization for Economic Cooperation and Development (OECD), according to a new report from the organization.

U.S. expectancy in 2011 was 78.7 years, which is slightly below the OECD average of 80.1. For U.S. men, the average life expectancy is 76, while it's 81 for U.S. women. (At five years, this gap in life expectancy between men and women is smaller than the OECD average of six years).

The U.S. life expectancy comes in just behind Slovenia, at 80.1 years, and Denmark, at 79.9 years. Comparatively, life expectancy is 81.1 years in the United Kingdom and 82.8 years in Switzerland (the country that came in first in the ranking). The Russian Federation came in last, with a life expectancy of 69.8 years.

**Huffington Post on 11/21/13**

In contrast, it seems clear from the observed statistical data that long periods of incarceration actually <u>shortened</u> expected life-spans. Whether it is from the oppressive conditions of prison or the fact that prison populations by definition have an "unnatural" existence, the summary of those statistical facts is best noted by referencing actual decisions and statistical websites such as these taken from a position paper regarding life sentences for juveniles in Michigan.

<u>Life Expectancy for Incarcerated Individuals</u>

It is generally accepted that life in prison, with its stressors, violence and disease in and of itself significantly shortens one's life expectancy. See United *States v. Taveras*, 436 F. Supp. 2d 493, 500 (E.D.N.Y. 2006). (Life expectancy

within federal prison is considerably shortened) II EOR 72, Feld, Symposium on Youth and the Law, 22 ND J L Ethic Pub Pol 9, 63, fn. 231 (2008). See also, Elizabeth Arias, Ctr. for Disease Control, U.S. Life Tables, 2003, Nat'l Vital Statistics Rep., April 19, 2006, at 3, available at: http://www.cdc.gov/nchs/data/nvsr/nvsr54/nvsr54_14.pdf.

The actual extent of the diminished life expectancy resulting from imprisonment was addressed by the United States Sentencing Commission which defines a life sentence as 470 months (or just over 39 years). This is based on average life expectancy and median age of individuals at time of sentencing. Based on the median age at sentencing (25 years) the life expectancy for a person in general prison population is 64 years of age. U.S. Sentencing Commission Preliminary Quarterly Data Report (through June 30, 2012) at A-8, available at:

http://www.ussc.gov/DataandStatistics/Federal_Sentencing_Statistics/Quarterly _Sentencing_Updates/USSC_2012_3rd_Quarter_Report.pdf .

Section 5081.150 of the Texas Government Code details the requirements for when parole is calculated on successive sentences (See attached opinion below). In summary form, when a person is appropriately sentenced to

successive sentences by a trial court, the person must finish parole eligibility on the first case <u>before</u> beginning to earn parole credit on the successive cases.

This becomes highly relevant when one considers the effect of stacking lengthy sentences on juveniles. It is clear at some point that stacking multiple life sentences or lengthy sentences creates a "de facto" or effective life without parole sentence. One need only turn to census data to illustrate this.

It is easy to see that even two lengthy terms of years, if stacked, could result in an effective life without parole sentence. In the case of Mr. Carmon, where the State would argue that he is subject to a 40 year sentence under the new law [which they wish to apply retroactively] because of the stacking order applied by the trial court Mr. Carmon would have to serve 30 years minimum on his 99 year Aggravated Robbery sentence and <u>then</u> begin a 40 year eligibility march at the age of 49 towards possible release. Sadly, even under the charitable OECD figures rather than the more dismal prison expectation of 64 years, by the time Mr. Carmon would be eligible for release at 89 years of age, give or take a month, he would already be dead. There is no clearer cut case of de facto life without parole than this unconstitutional stacking order by the 174th District Court. The only difference is that by one set of figures Mr.

Carmon would be dead some time in his 78th year, 11 years before parole eligibility or some time in his 64th year, 25 years before parole eligibility. To quote a popular saying, if it looks like a duck, acts like a duck, and quacks like a duck… it's a duck. If 89 years looks like, sounds like, and feels like a life sentence without parole…then it is. It should be ruled unconstitutional under *Miller v. Alabama* id.

Other Jurisdictions

There is a clear split among the various states that the Appellant has reviewed. On the one side, broadly speaking, are California, Iowa, and Wyoming, which have applied the reasoning of *Miller v. Alabama* 132 S.Ct. 2455 (2012), *Graham v. Florida* 130 S. Ct. 2011 (2010) and *Roper v Simmons* 543 U.S. 551 (2005) and concluded that successive sentences are barred if they create a de facto life without parole term of imprisonment. On the other hand, Louisiana has refused to extend the rationale of *Miller* any further. Florida appears to be wrestling with this issue as its Courts of Appeals are split with some refusing to extend the reasoning while the First District Court of Appeals struck down a virtual de facto life without parole sentence.

In the First District in *Thomas v. State,* 78 So. 3d 644 (Fla. Dist. Ct. App. 2011), the court held that a 50 year sentence given to a 17 year-old was constitutional but acknowledged that a lengthy term of year sentence may become the equivalent of a life sentence and thus would be unconstitutional. Shortly after in *Floyd v. State* 87 So. 3d 45 (Fla. Dist. Ct. App. 2012), the First District added up the years that the juvenile was sentenced to and concluded that there was no realistic possibility of parole. It thus held the sentence unconstitutional. The Florida Supreme Court is about to rule on this split of authority.

Following the Florida lead the Supreme Court of Louisiana has also held to a narrow reading of *Graham* and *Miller*. See *State v. Brown* 118 So. 3d 332 (La. 2013). The Louisiana Supreme Court declined in the absence of any further guidance to extend the *Miller* holding to "de facto" life without parole sentences stating "we see nothing in *Graham* that even applies for multiple convictions as *Graham* conducts no analysis on how to handle such sentences" See *State v. Brown* 118 So. 3d at 341. However in an odd tangent of reasoning that same Louisiana Supreme Court overturned a life without parole sentence given to a juvenile offender because of a failure to consider individual

mitigating factors under *Miller* based in the sentencing courts' decision. See *State v. Williams* 108 So. 3d 1169 (La. 2013); see also *State ex rel Landry v. State* 106 So. 3d 106 (La. 2013).

By stark contrast in *People v. Caballero* 282 Pacific 3d 291, 293, 294 (Cal. 2012), the California Supreme Court directly addressed de facto life without parole sentencing and said that there was no principled difference under *Graham* and *Miller* between a statutory life without parole and consecutive terms of 40 years to life and two terms of 35 years to life, resulting in a minimum of 105 years before being eligible for parole. See *People v. Caballero* 282 Pacific 3d 291, 293, 294 (Cal. 2012).

The Iowa supreme court also determined that de facto life without parole sentence violated *Miller v. Alabama* in *State v Ragland* 836 N. W. 2d 107 (Iowa 2013). This was a different set of factual circumstances because after the Supreme Court's decision in *Miller v. Alabama* because Iowa's governor took the independent action of commuting 38 juvenile homicide offenders [[including Ragland] to life with no possibility of parole for 60 years. Mr. Ragland appealed the 60 year sentence challenging both the government's authority and the actual action as unconstitutional. The Iowa court first

examined whether the commuted 60 year term was a mandatory sentence; the court said it was because it did not take into account the individual offenders characteristics but simply changed the ultimate length of a sentence. There was no consideration of youth or any other factor to take into account the governor's decision to commute all 38 youthful offenders.

Although the court found that the governor had authority to commute sentences it determined that he could not circumvent *Miller v. Alabama* id simply by changing the length of the sentence. The court also looked at the issue of de facto life without parole sentences by calculating that the defendant would not be eligible for parole until the age of 78. The Ragland court specifically recognized that under standard morality tables Mr. Ragland was only expected to live to 78.6 years. See *State v Ragland*, 836 N.W. 2d at 119. The court noted that when a sentence is the practical equivalent of life without parole that it would violate the mandates of *Miller*, stating it was important that the spirit of the law not be lost in the application. See *Ragland* at 121. On the same day as it released the Ragland decision the Supreme Court of Iowa also considered *State v. Null* 836 N.W. 2d 41, 45, 72 (Iowa 2013). The decision in Null focused on a "meaningful opportunity to obtain release based on the

Graham and Miller factors on the lessened moral culpability of juveniles and the chance for behavioral reform. The court in Null expressed skepticism that the potential for release at the age of 69 years old somehow answered the Miller courts concerns regarding opportunity for reform for juveniles. (As a side note the Iowa Court in Null also noted that the prison life expectancy figures made it even less likely that Mr. Null would get any kind of opportunity for actual release).

In the final analysis to deny meaningful opportunity for parole either by a sentence that says it is life without parole or by artificially creating a set of sentences that does the same thing, is to defy *Miller v. Alabama* id.

## V.
## CONCLUSION

The State cannot create a de facto life without parole sentence by stacking the cases of a juvenile one atop the other in order to get around *Miller v. Alabama*,. The trial court likewise cannot issue such an order if it in fact creates such a result. In this very limited instance, where the crime for which he was convicted when stacked, creates the same result consecutively that it does under the old sentencing scheme, it violates *Miller v. Alabama*. The

11

sentencing order must be struck down, and the sentences "unstacked", as it were, and ordered to run concurrently, either by this Honorable Court or by the trial court. The stacking order must be undone, and this judgment either reformed or sent back with appropriate instructions for a new sentencing

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Petitioner prays that this Honorable Court grant this Petition for Discretionary Review, set this cause for oral argument and further briefing, that the judgment of the Court of Appeals be reversed, and the cause remanded to the Court of Appeals for reconsideration or to the trial court for a new trial or sentencing. Petitioner also asks for whatever other relief to which she may be entitled to under law and in the interests of justice.

Respectfully submitted,

/s/ Patrick F. McCann
PATRICK F. McCANN
SBOT# 00792680
909 Texas Ave., Ste. 205
Houston, Texas 77002
Ph: (713) 223-3805
Fax: (281) 667-3352

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review was sent to the following persons via email using the e-filing service on this 29th day of January 2015:

Alan Curry:            curry_alan@dao.hctx.net

Heather A. Hudson:     hudson_heather@dao.hctx.net


/s/ Patrick F. McCann

Attorney for Appellant


## CERTIFICATE OF COMPLIANCE

Under the Texas Rules of Appellate Procedure I hereby certify that this document contains less than the mandated number of pages, 14 point font and is 2,821 words based upon a word count under MS Word.


/s/ Patrick F. McCann
Attorney for Appellant



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-01124-CR

_____

**CASEY DEMON CARMON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1243459**

## O P I N I O N

Appellant, Casey Demon Carmon, was charged by indictment with capital murder.[1]  Appellant pleaded not guilty.  The jury found him guilty.  The trial court assessed punishment at life imprisonment and granted the State's motion to

---

[1]   *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011), § 19.03(a)(7)(A) (Vernon Supp. 2014).

cumulate the sentence with an earlier 99-year sentence. In six issues on appeal, Appellant argues (1) the trial court had no authority to impose the sentence in his judgment, (2) the trial court's order to cumulate the sentences violates the Eighth Amendment to the United States Constitution, (3) the verdict and sentence violate double jeopardy as multiple punishments for the same offense, (4) the trial court abused its discretion by denying his motion to suppress his custodial statement, and (5) the evidence is insufficient to support the judgment.

We affirm.

## Background

Appellant and three other people devised a plan to rob a convenience store. Appellant was 17 years old at the time of the offense. When they arrived at the convenience store, Appellant was given a gun. He checked to make sure the gun was loaded and then cocked it. He went into the store with Mihn Truong. Two clerks were in the store. One was standing next to the cash register. The other was reading a newspaper at the other end of the counter.

Appellant walked up to the clerk reading the newspaper, pointed the gun to this head and said, "You know what this is." The clerk grabbed the gun, and a struggle over the gun ensued. In an interview with Detective D. Arnold, Appellant said that he only shot the first clerk during the struggle and that the gun went off accidentally. In contrast, Truong testified at trial that, during the struggle,

2

appellant shot the clerk twice. Appellant was then able to push the clerk off of him. Appellant then shot him a third time in the chest.

After this, Truong ran to the door and called for Appellant to follow. Appellant told Detective Arnold that he saw the other clerk reach for a gun. Appellant explained that he shot the second complainant two times because he thought the complainant was going to shoot Truong. He asserted this twice in his interview. Truong testified that he told Appellant that the clerk was reaching for a gun. He testified that Appellant shot in the clerk's direction, but did not aim the gun at the clerk.

During the course of the investigation, Detective Arnold decided to interview Appellant. Appellant was incarcerated for a separate offense at the time. Detective Arnold went to the jail to talk to Appellant. Officer P. Sanders brought Appellant to the interview room.

It is undisputed that Appellant and Detective Arnold were together in the room for over two hours. Detective Arnold recorded the audio of the final 15 minutes of their time together. At the start of the recording, Detective Arnold read Appellant his rights pursuant to article 38.22 of the Texas Code of Criminal Procedure. Appellant agreed to waive his rights and proceeded to talk to Detective Arnold about his involvement in the underlying offense.

3

In a motion to suppress hearing, Appellant testified that he did not talk to Detective Arnold during the initial two hours other than to say that he did not want to talk to him and that he wanted to be taken back to his cell. He testified that Detective Arnold told him that he could not go back to his cell and would have to stay in the room with him.

Detective Arnold denied that Appellant ever attempted to stop the interview. He testified that he told Appellant that it was Appellant's choice to talk to him. Once, he stepped out of the room for a few minutes to give Appellant time to think about what he wanted to do.

Everyone agreed that, once during the two hours, Appellant asked to go to the restroom. Detective Arnold released Appellant to Officer Sanders to take Appellant to the restroom. Officer Sanders testified that, during their walk, Appellant told him that he wanted to go back to his cell. Officer Sanders told him that decision was up to Detective Arnold. After Appellant came out of the restroom, Officer Sanders took Appellant back to the interview room.

Officer Sanders also testified that he stood outside the interview room during the entire time Appellant was in the room. The door was closed and the hallway was noisy. As a result, Officer Sanders could hear very little of what was said while Appellant and Detective Arnold were together. He testified that he did hear one brief exchange, however. He heard Appellant tell Detective Arnold that he

4

wanted to go back to his cell. He then heard Detective Arnold respond that Appellant could not go to the cell until he was done talking to him.

Prior to the trial on the underlying offense, Appellant had been found guilty of aggravated robbery and was sentenced to 99 years' confinement. After the jury found him guilty of the underlying offense, the trial court assessed punishment at life. The State presented a motion to have Appellant serve the two sentences consecutively as opposed to concurrently. The trial court granted the motion.

## Improper Sentence

In his first issue, Appellant argues that the trial court had no authority to impose the sentence in his judgment. Appellant was 17 years old at the time he committed the underlying offense. Appellant was charged with committing capital murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011), § 19.03(a)(7)(A) (Vernon Supp. 2014). Capital murder is a capital felony. *Id.* § 19.03(b).

At the time of trial, section 12.31 of the Texas Penal Code provided that, when the State does not seek the death penalty, the sole punishment for a capital felony was life without parole, except in circumstances not applicable here. *See* Act of May 20, 2009, 81st Leg., R.S., ch. 765, § 1, 2009 Tex. Gen. Laws 1930, 1930 (amended 2013) (current version at TEX. PENAL CODE ANN. § 12.31(a) (Vernon Supp. 2014)). Before the trial, the United State Supreme Court issued

5

*Miller v. Alabama*, --- U.S. ---, 132 S. Ct. 2455 (2012). In *Miller*, the court held that statutes imposing mandatory life sentences for juveniles under the age of 18 violated the Eighth Amendment to the United States Constitution. *Id.* at ---, 132 S. Ct. at 2469.

Based on *Miller*, the trial court announced at the start of the trial that, if the jury found Appellant guilty, the court would sentence Appellant to life imprisonment as opposed to life without parole. The jury found Appellant guilty, and the trial court assessed punishment at life imprisonment. After Appellant filed his notice of appeal but before he filed his brief, the Texas Legislature amended section 12.31 to conform with *Miller*. *See* Act of July 11, 2013, 83rd Leg., 2d C.S., ch. 2, § 1, 2013 Tex. Sess. Law Serv. 4802, 4802 (West). The statute now provides, in pertinent part, that, when the State does not seek the death penalty, the punishment for a capital felony is "life, if the individual committed the offense when younger than 18 years of age." TEX. PENAL CODE ANN. § 12.31(a)(1).

Appellant's argument in his first issue is that the trial court lacked the authority to sentence him to life imprisonment at the time of sentencing because the revision to section 12.31 had not been enacted at that time. Accordingly, Appellant argues that we must remand for a new sentencing hearing, even though his sentence will be the exact same as what it is now. We disagree that remand is required.

6

When the legislature revised section 12.31 to conform with *Miller*, it specifically provided, "The change in law made by this Act[] applies to a criminal action pending, *on appeal*, or commenced on or after the effective date of this Act, regardless of whether the criminal action is based on an offense committed before, on, or after that date . . . ." Act of July 11, 2013, 83rd Leg., 2d C.S., ch. 2, § 3(1), 2013 Tex. Sess. Law Serv. 4802, 4803 (emphasis added). Accordingly, even if we agreed that Appellant had suffered some harm by receiving a punishment below what was statutorily authorized at the time of the sentencing, any error and harm has since been corrected by the legislature.[2]

We overrule Appellant's first issue.

## Consecutive Sentencing

In his second issue, Appellant argues that the trial court's granting the State's motion to have Appellant serve the sentence consecutively with a 99-year sentence for another crime amounts to a de facto punishment of life without parole. Appellant argues that this de facto life without parole violates *Miller*.

---

[2]  Appellant also suggests that there is a discrepancy between what the trial court considered to be Appellant's eligible time for parole for the life sentence and what the current framework establishes as his eligible time for parole. Even if a discrepancy exists, the change in the law "applies to a criminal action . . . on appeal." Act of July 11, 2013, 83rd Leg., 2d C.S., ch. 2, § 3(1), 2013 Tex. Sess. Law Serv. 4802, 4803. Accordingly, the current framework for determining eligibility for parole controls over anything the trial court considered to be the law at the time. *See id.*

Before the underlying trial, Appellant was tried for aggravated robbery. The jury in that case found him guilty and assessed punishment at 99 years' confinement. The State filed a motion with the trial court in this case requesting that Appellant serve the 99-year sentence and the sentence in this case consecutively rather than concurrently. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (Vernon Supp. 2014) (assigning trial court discretionary authority to have multiple sentences be served cumulatively or concurrently). At a hearing on the motion, conducted the day after Appellant's conviction in this case, Appellant argued that cumulating the two sentences would violate *Miller*. The trial court granted the motion.

Prior to *Miller*, the United States Supreme Court considered the constitutionality of assessing the death penalty against minors and of assessing life without parole for non-homicide offenses. *See Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183 (2005) (death penalty); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010) (life without parole for non-homicide offenses). The supreme court determined the constitution required categorical bans on both practices. *See Roper*, 543 U.S. at 578, 125 S. Ct. at 1200; *Graham*, 560 U.S. at 82, 130 S. Ct. at 2034.

In *Miller*, in contrast, the supreme court did not announce a categorical ban on assessing life without parole on minors. --- U.S. at ---, 132 S. Ct. at 2469. Instead, the court held that sentencing schemes could not "*mandate*[] life in prison

8

without possibility of parole for juvenile offenders." *Id.* (emphasis added). While life without parole can be assessed against a minor, the sentencer is required "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.*

Based on this, Appellant's argument that "de facto sentences of life without parole" violate *Miller* cannot stand. The cumulation of the two offenses was not imposed under a mandatory sentencing scheme. Instead, the two offenses were cumulated through the trial court's normative, discretionary ruling. *See Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006) (holding that sentencing is normative process and that same is true for discretionary decision to cumulate sentences).

Furthermore, even assuming *Miller* extends to rulings on motions to cumulate sentences where a "de facto" life without parole sentence could be imposed, we still find no violation. The record reflects that the trial court was well aware of *Miller* and its holdings. Accordingly, we have no basis for determining that the trial court failed to consider the factors required to be considered under *Miller*. *See Miller*, --- U.S. at ---, 132 S. Ct. at 2469 (requiring sentencer to take into account how children are different and how those differences counsel against sentence of life without parole). The trial court presided over both trials that resulted in the sentences in question. The trial court expressly noted its ruling was

based on its knowledge of the facts presented at both trials. While no evidence was specifically introduced at the hearing, the record reflects that the trial court did not prevent the parties from introducing any.[3] Instead, the trial court specifically told the parties that it would "hear whatever you've got." At the end of the hearing, the trial court confirmed, "Both sides have had their say, right?" Based on its knowledge of Appellant, of the circumstances surrounding the crimes he committed, and of Appellant's behavior in those circumstances, the trial court decided to cumulate Appellant's sentences. This ruling conforms with the requirements of *Miller*.

In supplemental briefing to this Court, Appellant has cited authority from other jurisdictions involving cumulative sentences for separate offenses, post-*Graham*. *See, e.g., Bunch v. Smith,* 685 F.3d 546 (6th Cir. 2012), *cert. denied* 133 S. Ct. 1996 (2013); *People v. Caballero,* 282 P.3d 291 (Ca. 2012); *State v. Null,* 836 N.W.2d 41 (Ia. 2013); *State v. Brown,* 118 So.3d 332 (La. 2013). In those cases, the courts applied a *Graham* analysis when the trial court had imposed aggregate sentences, but with different results that turned on the facts of the case and the crimes committed. In *Caballero,* the California Supreme Court remanded

---

[3] Because the record reflects that the trial court did not prevent the presentation of further evidence and because Appellant has not raised an issue on appeal identifying any exclusion of probative evidence necessary for the trial court's determination, we do not need to decide whether an evidentiary hearing is required or what evidence, if any, might be necessary for resolution of a motion to cumulate sentences.

for a new sentencing hearing, when multiple convictions for attempted murder arose from one criminal episode and reached an aggregate minimum sentence of 110 years. 282 P.3d at 265, 296. None of the convictions was for a homicide offense. *Id.* at 295. Similarly, in *Null*, the Supreme Court of Iowa remanded for a new sentencing hearing for an aggregate sentence with a minimum prison term of 52.5 years; the court concluded that *Graham* applied to consecutive sentences for second-degree murder and first-degree robbery that arose from the same criminal episode. *See Null,* 836 N.W.2d at 45, 70, 76.

In contrast, the Louisiana Supreme Court upheld aggregated sentences for an aggravated kidnapping and four counts of robbery, concluding that aggregating the sentences, even if they arose from the same criminal episode, did not offend *Graham's* prohibition on a sentence of life without parole in non-homicide cases. *See Brown,* 118 So.3d at 332–33, 342. In *Brown,* the court recognized that *Graham* precluded a sentence of life without parole for any given non-homicide offense (in that case, aggravated kidnapping), but held that nothing in *Graham* required reformation of the convicting court's determination that the kidnapping and robbery sentences run consecutively. *Id.* In so doing, the court relied on the Sixth Circuit's decision in *Bunch*, which upheld a cumulative sentence of 89 years for non-homicide offenses. *See id.* at 337 (citing *Bunch*, 685 F.3d at 551).

11

We conclude that the trial court's decision in this case does not violate the cruel and unusual punishment parameters for juveniles that the Supreme Court set forth in *Graham*. Unlike the sentences in *Caballero* and *Null*—in which the consecutive sentences arose from the same criminal episode—here appellant committed capital murder, killing two people, eight months after an unrelated aggravated robbery. Nothing in *Graham* precludes the later sentences—for a different criminal episode and for a homicide offense of the most serious kind— from running consecutively. In addition, the trial court considered the effect of the Supreme Court's decision in *Miller* in declining to impose the then-required sentence for juveniles of life without parole.

*Graham* prohibits life sentences for juveniles who committed only non-homicide offenses. 560 U.S. at 82, 130 S. Ct. at 2034. Because one of the cumulated sentences in this case is for the offense of homicide, *Graham* is not a bar to cumulating the sentences. *See id.*; *Arredondo v. State*, 406 S.W.3d 300, 306 (Tex. App.—San Antonio 2013, pet. ref'd) (upholding cumulation of two life sentences when one sentence was for homicide).

We overrule Appellant's second issue.

**Double Jeopardy**

In his third issue, Appellant argues the verdict and sentence violate double jeopardy as multiple punishments for the same offense. Appellant points out that,

12

in the punishment phase of his aggravated robbery, the State introduced evidence of his committing the underlying offense of capital murder. The jury assessed 99 years' confinement in that case. Appellant argues that, because it introduced evidence of the underlying offense in the punishment phase for the aggravated robbery case, the State was barred by the prohibition on double jeopardy from seeking a judgment in the underlying case.

As the State points out, the Texas Court of Criminal Appeals has rejected this argument long ago. "The Double Jeopardy Clause of the United States Constitution embodies three protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex. Crim. App. 1994). "Extraneous offenses are frequently given consideration in sentencing decisions and the double jeopardy clause is not offended." *Id.* at 26. This principle has been universally recognized. *Id.* at 28.

We overrule Appellant's third issue.

## Motion to Suppress

In his fourth and fifth issues, Appellant argues that the trial court abused its discretion by denying his motion to suppress his custodial statement.

13

## A.	Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *See Gonzales v. State,* 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When, as here, the trial court makes findings of fact with its ruling on a motion to suppress a statement, we do not engage in our own factual review but determine only whether the record supports the trial court's factual findings. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Unless a trial court abuses its discretion in making a finding not supported by the record, we will defer to the trial court's fact findings and not disturb the findings on appeal. *See id.*

**B.    Analysis**

Appellant was already incarcerated before he was charged with the underlying offense. When he obtained information linking Appellant to the underlying offense, Detective Arnold went to the jail to talk to Appellant. Officer Sanders brought Appellant to the interview room.

It is undisputed that Appellant and Detective Arnold were together in the room for over two hours. Detective Arnold recorded the audio of the final 15 minutes of their time together. At the start of the recording, Detective Arnold read Appellant his rights pursuant to article 38.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2014). Appellant agreed to waive his rights and proceeded to talk to Detective Arnold about his involvement in the underlying offense. What took place before the recording was a matter of dispute in the motion to suppress hearing.

Appellant testified that he did not talk to Detective Arnold during the initial two hours other than to say that he did not want to talk to him and that he wanted to be taken back to his cell. He testified that Detective Arnold told him that he could not go back to his cell and would have to stay in the room with him.

Detective Arnold denied that Appellant attempted to stop the interview. He testified that he told Appellant that it was Appellant's choice to talk to him. Once,

15

he stepped out of the room for a few minutes to give Appellant time to think about what he wanted to do.

Everyone agreed that, once during the two hours, Appellant asked to go to the restroom. Detective Arnold released Appellant to Officer Sanders to take Appellant to the restroom. Officer Sanders testified that, during their walk, Appellant told him that he wanted to go back to his cell. Officer Sanders told him that decision was up to Detective Arnold. After Appellant came out of the restroom, Officer Sanders took Appellant back to the interview room.

Officer Sanders also testified that he stood outside the interview room during the entire time Appellant was in the room. The door was closed and the hallway was noisy. As a result, Officer Sanders could hear very little of what was said while Appellant and Detective Arnold were together. He testified that he did hear one brief exchange, however. He heard Appellant tell Detective Arnold that he wanted to go back to his cell. He heard Detective Arnold respond that Appellant could not go to the cell until he was done talking to him.

In its findings of fact, the trial court found that Detective Arnold was credible and accepted his testimony as true. The trial court further found that Appellant was not credible and did not believe his testimony. Additionally, the trial court found that it was difficult to hear in the hallway where Officer Sanders

16

was standing and that Officer Sanders "could not have accurately heard the content of the conversation that took place between [Appellant] and Officer Arnold."

The thrust of Appellant's argument on appeal is that Officer Sanders was an honorably-discharged navy veteran "who had no reason to lie, and every reason to look the other way." Regardless, the credibility of each of the witnesses and the weight to give their testimony rests exclusively in the province of the trier of fact. *See Gonzales,* 369 S.W.3d at 854 (holding almost total deference should be given to trial court's determination of historical facts, especially those based on evaluation of witness credibility or demeanor); *Ross*, 32 S.W.3d at 855 (holding trial court is the sole and exclusive trier of fact at suppression hearing and may choose to believe or disbelieve all or any part of witnesses' testimony).

Appellant also argues that his confession was coerced. A confession can be determined to be involuntary and, accordingly, in violation of federal due process rights, "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). Appellant testified at the suppression hearing that Detective Arnold told him that, if he did not co-operate, Appellant would get the

17

death penalty.[4]  In its findings of fact, however, the trial court specifically found, "Officer Arnold did not threaten [Appellant] . . . .  Officer Arnold did not tell [Appellant] that he would receive the death penalty if convicted of capital murder." Appellant has failed to establish that the trial court could not have disbelieved Appellant's claim of being threatened with the death penalty if he failed to co-operate.  *See Gonzales,* 369 S.W.3d at 854; *Ross*, 32 S.W.3d at 855.

We hold that Appellant has failed to establish that the trial court abused its discretion by denying the motion to suppress.  We overrule Appellant's fourth and fifth issues.

## Sufficiency of the Evidence

In his sixth issue, Appellant argues that the evidence is insufficient to support the judgment.

## A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review.  *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)).  This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307,

---

[4]  By that time, the United States Supreme Court had held the constitution prohibited assessing the death penalty against defendant who committed crimes as a minor.  *See Roper v. Simmons*, 543 U.S. 551, 578, 125 S. Ct. 1183, 1200 (2005).

18

319, 99 S. Ct. 2781, 2789 (1979). *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing

19

the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.     Analysis**

In this issue, Appellant argues that the evidence establishes that he did not intend to kill the two complainants. Appellant was charged with capital murder. As it applies to Appellant, a person commits capital murder when he murders more than one person during the same criminal transaction. TEX. PENAL CODE ANN. § 19.03(a)(7)(A). Murder, for the purposes of capital murder, constitutes intentionally or knowingly causing the death of an individual. *Id.* §§ 19.02(b)(1), 19.03(a). Appellant argues that the evidence disproves that he intentionally or knowingly caused the complainants' deaths.

For the first man he shot, Appellant told Detective Arnold that the gun went off accidentally after the two began struggling for control of the gun. Truong testified, however, that Appellant shot the first man three times. The autopsy confirmed this. Truong testified that the first two shots occurred while Appellant and the first complainant were struggling with the gun. The third shot, however,

20

occurred after Appellant pushed the complainant away. Appellant then pointed the gun at him and shot him in the chest.

For the second man shot, Appellant relies on Truong's testimony to establish he lacked the requisite intent. Truong testified that, after Appellant shot the first complainant, he ran to the door and called Appellant to leave as well. Truong watched from the door and saw the other clerk reaching for something under the counter. Truong yelled that the clerk had a gun. Appellant responded by shooting in the direction of the second clerk. Truong testified that Appellant did not point the gun directly at the clerk, but just aimed in clerk's direction and fired.

In contrast to this testimony, Appellant told Detective Arnold that he saw the second clerk reach for a gun. Appellant explained that he shot the second complainant two times because that complainant was going to shoot Truong. He asserted this twice in his interview.

All of these conflicts in the testimony were presented to the jury to resolve. *See Jackson,* 443 U.S. at 326, 99 S. Ct. at 2793 (holding appellate courts defer to jury's resolution of conflicts in evidence as long as resolution is rational). The jury could have rationally resolved the conflicts in the evidence to determine that Appellant intentionally or knowingly caused the death of both individuals. Accordingly, we hold the evidence is sufficient to support this element and the judgment of conviction.

21

We overrule Appellant's sixth issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Bland, and Sharp.

Justice Sharp, concurring without opinion.

Publish.  TEX. R. APP. P. 47.2(b).