ROBERT BALLARD WALKER V. THE STATE.

No. 20604. Delivered November 22, 1939.
Rehearing Denied January 31, 1940.

The opinion states the case.

*Bassett & Parks,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The conviction is for murder; punishment assessed at death.

It appears from the record that appellant killed J. J. Mayfield on the night of December 23, 1938, while attempting to rob him on a side road near a highway and while both were sitting in the car of the deceased.

The record contains a detailed confession by the appellant in which he relates his previous preparations and plans for robbing Mayfield. After the introduction of this statement, the State introduced evidence to corroborate in great detail the major portion of the things which the appellant recited, both before the commission of the offense, at the time of it and afterwards up to the time of his arrest. Among the things stated, the appellant said that he made the deceased drive to the point where the homicide occurred in Dallas County, just north of Love Field, and asked him for his money. At that time he pulled his pistol, and upon seeing it the deceased kicked up his foot and then, through fright or for some other cause, appellant accidentally discharged the pistol. This statement fully detailed by the appellant is not modified, nor is it denied by the State in any of the evidence introduced by it. It is the principal contention in this appeal that this was an exculpatory statement made by the appellant and shows that the killing was accidental and not intentional. It is contended that the indictment having charged the killing as being intentional, appellant could not have been convicted under the evidence and that the trial court should have given the special requested charge directing the jury to acquit the appellant. To this we cannot agree.

Appellant, together with two companions (Robert Currie and another) had planned the robbery of Mr. Mayfield for several days prior to the homicide. It had been insisted by appellant that, because of the fact that Mayfield knew him and would recognize him, the other party should do the robbing and that he should be aided by the appellant and Currie who would keep at a sufficient distance so that Mayfield could not identify them. Under this plan it was indicated that the vic-

tim should not be murdered. However, the third party declined to go through with the robbery and have any further part in it. Currie and the appellant then reformed their plan, which was carried out according to their design, and, in doing so, Currie furnished appellant five dollars with which to purchase a second-hand pistol with a round of ammunition. Great care and caution were taken to see that the pistol would shoot. Appellant approached the undertaking with that same view that he had expressed to his deserting confederate,—that he could not rob Mr. Mayfield and get away with it because Mayfield knew him. Currie and the appellant went out to the point where it was known that Mayfield would be at a particular time and waited for him. Mayfield owned several filling stations and made his settlements in taking up the money with regularity. They expected him at this point at a given time. It seems that he arrived according to his usual schedule. The appellant entered Mayfield's car and caused him to drive to the fatal spot. Appellant then asked Mayfield how much money he had, to which he replied that he had but little. As Mayfield took the money out of his pocket, he seems to have discovered the gun in the hand of the appellant. Under excitement or otherwise, Mayfield kicked up his foot and this caused appellant to discharge the pistol.

The range of the bullet from the first shot is not given, but the evidence does disclose that the deceased had one wound straight across the body in the region of the abdomen. There were two other wounds which seem to have entered the body at a different angle to the one across the abdomen, but similar to each other. These two wounds were near each other and in the upper part of the body above the heart. There is nothing in the evidence to indicate that the first shot was fatal. To the contrary, the jury might well have concluded that the first shot was the one which glazed the abdomen and was only a flesh wound and that the other shots, being from a similar direction but different to the first, were those intentionally directed at a more vital part of the body. The doctor testified that either of the upper wounds would be fatal but the lower one was not. If either was the first fired, the others would have been unnecessary. Appellant deliberated after the first shot, but the next two may have been in quick succession. This would indicate that the two fatal wounds were fired last.

The physical facts are aided by the detailed preparations which were without dispute in the case and which warranted the jury in concluding that the murder of Mayfield was intended while the preparations were being made. He knew the

appellant and the appellant realized this and stated that he would be identified by Mayfield. This, the record shows, was done. It is a reasonable conclusion that the appellant's final plan and purpose was to rob Mayfield and do away with him so that he could not testify that appellant was the perpetrator of the crime.

Considering all the circumstances of the case, we think that this evidence was sufficient to warrant the jury in finding under the indictment that the appellant was guilty as charged. See reasoning in Shelburne v. State, 111 Texas Cr. R. 182, 11 S. W. (2d) 519.

Should it be conceded that the first shot was fired accidentally and that it inflicted the fatal wound, still the appellant would not have been entitled to the instruction requested because, according to his own statement, he was voluntarily engaged at the time of the homicide in the commission of a felony, namely, robbery. If, while voluntarily committing one felony, the accused accidentally commits another felony, he is guilty of the felony he accidentally commits as though he had willingly and intentionally perpetrated the same. Art. 42, P. C. Under this article the contention of the appellant is not tenable.

Furthermore, the appellant chose his theory of the submission of this question to the jury under the facts by his Special Requested Charges Nos. 3, 4 and 5, which the court gave and from which we quote as follows:

From Special Charge No. 3: "In this case you are charged as a part of the law of the case that if you should find and believe from the evidence, beyond a reasonable doubt that the defendant shot, and thereby killed, the said J. J. Mayfield, and in doing so he fired more than one shot; and you further find from the evidence, or have a reasonable doubt thereof, that the first shot was fired accidentally, and that thereupon the defendant became excited and not knowing what he was doing fired other shots which struck the said J. J. Mayfield, and that same were not fired intentionally, then same would not be a voluntary killing, and if you so find, or have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, 'Not Guilty'."

From Special Charge No. 4: "In this case you are charged as a part of the law of this case that if you find from the evidence, beyond a reasonable doubt that the defendant shot and killed the said J. J. Mayfield as charged, but you further find from the evidence, or if you have a reasonable doubt

thereof, that there were more than one shot fired, and that the first shot was accidental, and that said accidental shot was the shot that produced death, if it did, then you will acquit the defendant and say by your verdict 'Not Guilty' although you may further find from the evidence that after said accidental shot the defendant fired other shots that struck the said J. J. Mayfield. If you have a reasonable doubt thereof you will acquit the defendant."

From Special Charge No. 5: "In this case you are charged as a part of the law of the case that the indictment charges that the defendant voluntarily killed the deceased J. J. Mayfield by shooting the said J. J. Mayfield with a pistol and under such charge it devolves upon the State to prove by the evidence beyond a reasonable doubt that the defendant did voluntarily shoot and thereby kill said J. J. Mayfield. In this connection you are charged that by the term 'voluntary' as used in our statute means that the act must be done 'intentionally; not accidentally'.

"You are therefore charged that unless you find and believe from the evidence, beyond a reasonable doubt that the defendant shot and killed the said J. J. Mayfield with a pistol, and that he, at said time intentionally shot said Mayfield, and that such shooting was not accidental, you will acquit the defendant and say by your verdict 'Not Guilty.' If you have a reasonable doubt whether same was intentionally done and was not accidental, you will give the defendant the benefit of such doubt and acquit the defendant."

While we do not agree that appellant was entitled to the foregoing requested charges under the facts of this case, they nevertheless present his theory to the jury in a very fair manner, and they have passed on it adversely to his contention. Undoubtedly, this concludes that issue against him.

By Bill of Exception No. 3, appellant objects to the following testimony given by Bill Becker, the deputy sheriff to whom his voluntary confession was made: "I put him in the Dallas County jail. Yes, sir, I had a conversation with him with reference to this matter. Before he made the statement we discussed the case with him and he said he would like to tell the truth about it; and to get a typewriter and stenographer and let's get it taken; that it was going to cause him more trouble than anyone else."

The bill presenting this objection is qualified by the court who states that it was introduced at various times without

any objection from the appellant. With this qualification, there is no force to the bill. See Art. 667, C. C. P.; Fisher v. State, 1 S. W. (2d) 302, and authorities there cited.

It was proper for the State to introduce this evidence as a predicate to prove facts showing that the statement was voluntarily made. The willingness of the appellant to make a confession and his realization of the effect that the confession would have on him were important in determining that it was a free, full, fair and voluntary statement. Furthermore, in view of the statement made, it would be difficult to understand how any injury was added to that statement by reason of the preliminary remark of the appellant that "it was going to cause him more trouble than anyone else."

Appellant received the extreme penalty. His trial before the jury, according to the record before us, was cautiously and carefully conducted. He was ably represented by counsel. There is nothing before this court which shows any irregularity in the trial of the case. We have no jurisdiction to give further consideration to the case than that herein given.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In his motion for rehearing appellant insists that we were in error in holding that the evidence adduced upon the trial was sufficient to show the falsity of the alleged exculpatory statements of appellant embraced in his confession and introduced by the State. If the statement was exculpatory the State was bound by it unless it was shown by the evidence to be untrue.

In referring to testimony that may be looked to by the jury in passing upon the question of the truth of exculpatory statements of the accused which are introduced in evidence by the state, this court, in Nichols v. State, 10 S. W. (2d) 109, used language as follows: "However, the inference of untruth may be drawn by the jury from all the evidence, including any inconsistencies in the statement itself or in the statements as compared with other evidence adduced upon the trial which is regarded by the jury as true." Looking to the allegel exculpatory statement in the light of the foregoing announcement, we think the jury were warranted in concluding that it was untrue.

In view of the fact that the court gave a charge relative to accidental homicide, we leave undecided the question whether Art. 42, P. C., is applicable to the present situation.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.