

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00134-CR

JACOB GALEN EVERETT                                          APPELLANT

V.

THE STATE OF TEXAS                                                 STATE

----------

FROM 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1363213D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Jacob Galen Everett appeals from his conviction for capital murder and life sentence. Because we conclude that the evidence was sufficient, the conviction was not double-jeopardy barred, and the trial court did not abuse its discretion in the admission of evidence, we affirm the trial court's capital-murder judgment as modified. *See* Tex. R. App. P. 43.2(b).

---

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND

Randy Pacheco was the manager of a shoe store in Arlington. The store had a security camera monitoring the front customer area but had no camera in the back stock room. The owner of the store, Douglas Reinwald, trained his employees to comply with any robber's demands and to call the police only after the robber left the store.

On February 25, 2014, at approximately 12:00 p.m., Everett entered the store to try on a pair of boots but left without buying them because they were too expensive. Everett later admitted that he went to the store that day to look for security cameras because he planned to commit a robbery at the store. At 1:50 p.m., Officer Brett Worman of the Arlington Police Department was dispatched to the shoe store after a 9-1-1 caller reported hearing shots fired and noticing that the front door was locked and the back door was ajar, which was unusual. Worman entered the store through the back door and saw Pacheco lying face down in a pool of blood. Pacheco had a single gunshot wound to his face and had no defensive wounds. He had been shot from more than two feet away—not at point-blank range. No one else was in the store, the cash register drawer was open, and there were no signs of a struggle in the store. A crime-scene investigator found a shell casing from a nine-millimeter gun outside the store's back door. Reinwald determined that approximately $200 had been taken from the store's cash register and that a pair of boots was missing from the inventory.

The video of that day from the store's security camera showed a man armed with a gun and wearing gray sweatpants, a black hooded sweatshirt, a black ski mask, and gloves approach Pacheco in the store at around 1:48 p.m. Pacheco handed the man money from the cash register, and the man then pointed to the boot display on a wall. The man then followed Pacheco into the back room, carrying the gun behind his back. External security-camera footage from a nearby business showed that during the ten to fifteen minutes before the 9-1-1 call was made, someone drove and parked a tan Toyota Tacoma truck behind the shoe store next to a dumpster. The driver later drove off through a back alley. The police department released this footage of the truck and received a tip that identified the owner of a similar truck—Everett.

Police officers never saw the truck at Everett's home but traced the temporary tags on a car in front of his home to a local car dealership. The officers investigated and discovered that Everett had traded in a tan Toyota Tacoma three days after Pacheco was killed. On March 11, 2014, Detective Steve Griesbach went to Everett's home to ask about his activities on February 25, 2014. In the recorded interview, Everett admitted that he had gone to the shoe store to try on boots that day. Everett also told Griesbach that he had traded in his Toyota Tacoma for a Ford Fusion and that he owned a nine-millimeter gun, which he kept in the console of his car. Griesbach asked for permission to search Everett's car and bedroom, but he refused.

3

Griesbach decided to "freeze the scene"[2] and get a search warrant for Everett's car and bedroom. The ensuing search pursuant to the warrant resulted in officers finding a loaded nine-millimeter gun, $150 in cash, and the boots that were missing from the shoe store's inventory in Everett's car. In Everett's bedroom, officers found a black hooded sweatshirt and two backpacks. One backpack contained a ski mask and gloves that matched those used in the robbery. The second backpack contained food, water, knives, and two envelopes labeled "Plan A" and "Plan B" containing maps for different states. The shell casing found behind the shoe store the day of the robbery and murder was later matched to the gun found in Everett's car. The gun did not have a "hair trigger," which would cause the gun to fire with minimal pressure. In fact, minimal pressure to pull a trigger—equating to a hair trigger—would be "something in the ounces . . . or less than a pound." The gun found in Everett's car had a trigger pull of 7.1 to 7.7 pounds.

A grand jury indicted Everett with capital murder, murder, and aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. §§ 19.02(b)(1), 29.03(a)(2) (West 2011), § 19.03(a)(2) (West Supp. 2015). Everett pleaded not guilty to capital murder and murder, but pleaded guilty to aggravated robbery with

---

[2]Griesbach explained that freezing the scene prevented anyone from removing anything from the areas to be searched.

4

a deadly weapon.[3]  Everett testified at trial and admitted that he scouted the store, looking for security cameras, and returned later with his cocked-and-loaded gun and wearing a mask, hood, and gloves to rob Pacheco.  Everett wanted to leave the store by the back door and asked Pacheco to let him out and get him the boots that he had tried on earlier.  Everett testified that as he looked out the back door to see if the alley was clear, Pacheco threw a shoe box at his chest, causing him to flinch and accidentally fire the gun.  Everett was familiar with the shoe store because he routinely would play pool at a pool hall located across the parking lot from the shoe store.  Indeed, shortly after the robbery and murder, Everett and a friend went to the pool hall, and his friend testified that Everett seemed "fine"—he was not "upset," "excited," "twitchy," "nervous," or "troubled"—even after they both noticed "all the cops" at the shoe store.

A jury found Everett guilty of capital murder and aggravated robbery with a deadly weapon.  Because the State did not seek the death penalty, the trial court discharged the jury and, recognizing that aggravated robbery was a lesser-included offense of capital murder, sentenced Everett to life imprisonment without parole for capital murder.  *See* Tex. Code Crim. Proc. Ann. arts. 37.071, § 1 (West Supp. 2015); Tex. Penal Code Ann. § 12.31(a) (West Supp. 2015).  But the trial court entered two judgments: one for capital murder, reflecting a sentence of life confinement, and one for aggravated robbery with a deadly

---

[3]There is no indication in the record that Everett's guilty plea was the result of a plea-bargain agreement.

5

weapon, also reflecting a sentence of life confinement, to run concurrently. *See* Tex. Code Crim. Proc. Ann. art. 42.08 (West Supp. 2015); Tex. Penal Code Ann. § 3.03 (West Supp. 2015).

## II. SUFFICIENCY OF THE EVIDENCE

In his first point, Everett argues that the evidence was insufficient to prove that he had the requisite intent to kill Pacheco—that he acted intentionally. *See* Tex. Penal Code Ann. § 19.03(a)(2). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *See id.* § 6.03(a) (West 2011).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). "Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring). Circumstantial evidence of intent—the person's acts, words, and conduct—is reviewed with the same scrutiny as other elements of the offense. *See Laster v. State*, 275 S.W.3d 512, 519–20, 524 (Tex. Crim. App. 2009). When we are asked to determine the sufficiency of the

6

evidence to show an appellant's intent and when the record supports conflicting inferences, we presume that the trier of fact resolved any such conflict in favor of the prosecution and defer to that resolution. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993); *Stobaugh v. State*, 421 S.W.3d 787, 842 (Tex. App.—Fort Worth 2014, pet. ref'd). But reversal based on insufficient evidence, even evidence of intent, is restricted to those rare instances where the trier of fact did not act rationally. *See Laster*, 275 S.W.3d at 517; *Triplett v. State*, 292 S.W.3d 205, 209–10 (Tex. App.—Amarillo 2009, pet. ref'd).

The evidence showed that Everett entered the shoe store with the intent to rob Pacheco. Everett admitted he shot Pacheco with his gun but stated that the gun accidently fired when Pacheco threw a shoe box at him. Everett shot Pacheco in the forehead near his right eye from approximately two or more feet away. Soon after the robbery and murder, Everett and a friend played pool near the shoe store and watched the police activity from the window of the pool hall. The friend noted that Everett acted "[j]ust like regular Jacob." After he was arrested, Everett told his brother's girlfriend that he shot Pacheco because he was "scared." Although Everett testified that he did not intend to shoot Pacheco, the jury was free to disbelieve Everett's testimony and conclude that Everett entered the store not only with the intent to rob Pacheco at gun point but also with the intent to commit murder. Pacheco's actions in deliberately casing the shoe store for security cameras, later entering the store with a mask and a loaded gun that did not have a hair trigger, shooting Pacheco in the forehead

7

from two or more feet away, and then returning to routinely play pool with a friend across the parking lot from the shoe store could have led a reasonable and rational finder of fact to determine that Everett intentionally committed the murder of Pacheco. *See, e.g.*, *Turner v. State*, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991) (finding evidence that defendant was undisputedly present at the scene of the murder, gun required heavy trigger pressure, and victim was shot from a distance, sufficient to show intentional killing and refute defendant's claim gun fired during struggle for gun); *Thompson v. State*, 691 S.W.2d 627, 630 (Tex. Crim. App. 1984) ("A rational trier of fact could have inferred from appellant's acts of entering the office carrying a deadly weapon, . . . shooting her at close range, and then fleeing the scene . . ., that appellant intended to cause the death of the deceased."), *cert. denied*, 474 U.S. 865 (1985); *Walker v. State*, 135 S.W.2d 992, 993–94 (Tex. Crim. App. 1939) (even though defendant claimed shooting was accidental, concluding evidence that defendant planned robbery in great detail and ensured gun to be used would work sufficient to show defendant intentionally murdered); *Carmon v. State*, 456 S.W.3d 594, 604–05 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (holding evidence sufficient to support jury's finding that defendant intentionally murdered two victims even though defendant claimed shootings accidental because jury had power to resolve conflicts in testimony); *Slater v. State*, No. 02-11-00368-CR, 2013 WL 2631194, at *5–6 (Tex. App.—Fort Worth June 13, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding evidence sufficient to support finding that shooting was intentional

8

because law presumes an intent to kill when gun fired at close range and death results, even though defendant claimed shooting was accidental); *Allgood v. State*, No. 04-11-00358-CR, 2012 WL 3711695, at *5 (Tex. App.—San Antonio Aug. 29, 2012, pet. ref'd) (mem. op., not designated for publication) ("As for Allgood's contention that he shot Gass by accident, that the gun just 'went off' when he flinched, a firearms expert testified the trigger on the firearm used to kill Gass required a relatively heavy pull on the trigger to fire."); *cf. Fernandez v. State*, No. 10-01-121-CR, 2003 WL 131852, at *5 (Tex. App.—Waco Jan. 15, 2003, no pet.) (not designated for publication) (noting that although defendant's remorse immediately after the shooting and evidence of struggle between defendant and victim supported defendant's claim shooting was accidental and not intentional, evidence was sufficient to support finding that shooting was intentional or knowing). We overrule point one.

## III. DOUBLE JEOPARDY

In his second point, Everett argues that the State was double-jeopardy barred from prosecuting him for capital murder because he pleaded guilty to aggravated robbery with a deadly weapon, a lesser-included offense. *See* U.S. Const. amend. V; Tex. Code Crim. Proc. Ann. art. 1.10 (West 2005). A trial court's acceptance of a non-negotiated guilty plea to a lesser-included offense does not bar prosecution for the greater offense. *Kham v. State*, 689 S.W.2d 324, 326 (Tex. App.—Fort Worth 1985, pet. ref'd); *see also Ohio v. Johnson*, 467 U.S. 493, 501–02, 104 S. Ct. 2536, 2542 (1984). The State has the right of

9

election and may submit the more serious offense to the jury; thus, a defendant may not force the State's election by pleading guilty to a lesser-included offense. *Kham*, 689 S.W.2d at 327. Accordingly, the prosecution for capital murder was not double-jeopardy barred by Everett's non-negotiated guilty plea to a lesser-included offense. We overrule point two.

However, the trial court entered a judgment for both capital murder and its lesser-included offense—aggravated robbery with a deadly weapon—and ordered the two life sentences to run concurrently. *Cf. Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008) (holding double-jeopardy violation may be addressed for the first time on appeal when the error is clearly apparent from the face of the record). In orally pronouncing sentence, the trial judge expressly stated that she would only sentence Everett on the "greater offense of capital murder" because "aggravated robbery [was] the lesser[-]included offense." *See Littrell v. State*, 271 S.W.3d 273, 276–79 & n.33 (Tex. Crim. App. 2008); *Langs v. State*, 183 S.W.3d 680, 685–86 (Tex. Crim. App. 2006). The trial court's entry of a judgment regarding aggravated robbery conflicted with the trial court's refusal to orally pronounce sentence based on the capital-murder conviction. *See Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003) (holding oral pronouncement of sentence controls over conflicting judgment); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (recognizing court's authority to reform judgment "to make the record speak the truth when the matter has been called to its attention by any source"). This

constitutional error cannot be considered harmless because it contributed to Everett's punishment. *See* Tex. R. App. P. 44.2(a); *see also Price v. Georgia*, 398 U.S. 323, 331, 90 S. Ct. 1757, 1762 (1970) (concluding double-jeopardy violation could not be found harmless).

The appropriate remedy is to set aside the conviction, sentence, and judgment for the lesser-included offense and retain the conviction, sentence, and judgment of the greater offense. *See Littrell*, 271 S.W.3d at 279. We therefore retain the trial court's judgment for capital murder—entitled "Case No. 1363213D Count ONE"—and set aside the trial court's judgment for aggravated robbery— entitled "Case No. 1363213D Count THREE."[4] The judgment for capital murder is modified to delete the statement that the sentence shall run concurrently with count three. The judgment is also modified to clearly show that his punishment is imprisonment for life without parole to conform with the trial court's oral pronouncement. *See Baker v. State*, No. 12-14-00185-CR, 2015 WL 3958107, at *7 (Tex. App.—Tyler Oct. 14, 2015, pet. ref'd) (mem. op., not designated for publication); *cf. Turner v. State*, 443 S.W.3d 128, 129 (Tex. Crim. App. 2014) (modifying judgment to reform sentence from life without parole to life with the possibility of parole).

---

[4]Even though Everett received a life sentence for aggravated robbery as well, capital murder is the greater offense because it disqualifies Everett from parole eligibility. *See* Tex. Penal Code Ann. § 12.31(a)(2); *Ex parte Cavazos*, 203 S.W.3d 333, 338–39 (Tex. Crim. App. 2006).

## IV. ADMISSION OF EVIDENCE

In his third, fourth, and fifth points, Everett argues that the trial court abused its discretion by admitting into evidence, over his rule 403 trial objections, Griesbach's recorded interview with Everett, a postmortem photograph of Pacheco's face, and the money found in Everett's car. Tex. R. Evid. 403. We review a trial court's decision to admit evidence, as well as its decision regarding the relative weight of the probative value of the evidence, under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 2966 (2011). A trial court abuses its discretion if its determination lies outside the zone of reasonable disagreement. *Id.* However, "[t]he rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial." *Kirk v. State*, 421 S.W.3d 772, 782 (Tex. App.—Fort Worth 2014, pet. ref'd).

In the recorded interview, Everett admitted that he went to the shoe store on the day of the robbery and murder to look at black boots, that he owned a Toyota Tacoma truck that day, that he returned to the area later that same day to play pool with a friend, and that he owned a nine-millimeter gun that he kept in his car. Griesbach testified that Everett was calm during the interview, and the audio of the interview confirmed this testimony. Everett objected to the admission of the recording because it was unfairly prejudicial, which the trial court overruled. The recorded interview tended to rebut Everett's claim that the shooting was accidental, was probative of several elements of the charged

12

offenses that would be submitted to the jury, and was not unfairly prejudicial; thus, the trial court did not abuse its discretion in overruling Everett's rule 403 objection. *See, e.g.*, *Gould v. State*, No. 02-12-00202-CR, 2014 WL 4105290, at *3 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op., not designated for publication); *Rodriguez v. State*, No. 14-07-00142-CR, 2008 WL 4007493, at *9 (Tex. App.—Houston [14th Dist.] Sept. 2, 2008, pet. ref'd) (mem. op., not designated for publication). Further, Everett fails to argue how his substantial rights were affected by the admission of the recording, even if erroneous, other than to point out that he was sentenced to life imprisonment. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Everett does not argue that the recording had a substantial or injurious effect on the jury's guilty verdict. We overrule point three.

Everett also objected at trial to the admission of a postmortem photograph of Pacheco's face depicting the bullet wound to his forehead on the basis of rule 403, which was overruled. Again, Everett does not argue that the admission of the photograph affected his substantial rights or had an undue influence on the jury's guilty verdict. This photograph was not unfairly prejudicial and tended to rebut Everett's claim that he accidentally and reflexively shot the gun. *See Ventroy v. State*, 917 S.W.2d 419, 422–23 (Tex. App.—San Antonio 1996, pet. ref'd); *cf. Reese v. State*, 33 S.W.3d 238, 242 (Tex. Crim. App. 2000)

(holding photograph of pregnant murder victim in casket admitted at punishment unfairly prejudicial and inadmissible because it suggested jury's sentencing decision was made on improper, emotional basis and not on basis of other relevant evidence). The trial court did not abuse its discretion, and we overrule point four.

Everett finally contends that the admission of the money found in his car was an abuse of discretion. Everett objected at trial that the probative value of the money was outweighed by the danger of unfair prejudice, which the trial court overruled. The money was found in the car near the gun used to shoot Pacheco and the boots taken from the shoe store that day; thus, this evidence was admissible as part of the context of the charged offenses. *See Mann v. State*, 718 S.W.2d 741, 743–44 (Tex. Crim. App. 1986), *cert. denied*, 481 U.S. 1007 (1987). The money was probative of issues submitted to the fact finder and was not unfairly prejudicial; thus, the trial court did not abuse its discretion by overruling Everett's rule 403 objection. *See Franks v. State*, 138 S.W.2d 109, 113–14 (Tex. Crim. App. 1940). Further, Everett offers no cogent argument regarding the requisite harm flowing from the admission of the money. We overrule Everett's fifth point.

## V. CONCLUSION

We modify the trial court's judgment to vacate the conviction and sentence for aggravated robbery and to reflect only the conviction and sentence for capital murder. We further modify the trial court's capital-murder judgment to delete the

14

statement that the capital-murder sentence will run concurrently with the aggravated-robbery sentence.  As modified, we affirm the trial court's remaining judgment.  *See* Tex. R. App. P. 43.2(b); *Littrell*, 271 S.W.3d at 279 & n.33.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 14, 2016

15